ALBANY, Feb. 1824.

Supervisor, &c., of Sandlake
v.
Supervisor, &c., of Berlin

In the matter of THE SUPERVISOR and OVERSEERS OF THE POOR of the town of SANDLAKE *against* THE SUPERVISOR and OVERSEERS OF THE POOR of the town of BERLIN.

PURSUANT to an act passed June 19th, 1812, entitled an act to divide the towns of Greenwich and Berlin, in the county of Rensselaer, into three towns, these two towns were divided into three towns, by the names of Greenbush, Berlin and Sandlake ; and the second section required "That as soon as may be after the first Tuesday of April next, the Overseers of the Poor and the Supervisors of the said towns shall, after due notice given by any one Supervisor, meet at the dwelling house now occupied by Thomas Thompson, and apportion the money and poor belonging to the said towns of Greenbush and Berlin, among the three towns, agreeable to the last tax list for said county, and that forever afterwards each of the said towns shall support and maintain their own poor."

Under the usual clause in an act dividing towns, requiring the supervisors, &c., to meet and apportion the poor and moneys of the respective towns, if they omit to do this, or do it partially by omitting to pass upon a particular pauper, *mandamus* lies to compel them to correct the apportionment. One who had been occasionally and partially relieved by the town, and whose circumstances had undergone no material change for the better, after being relieved, was holden to be a pauper within the meaning of this clause.

Supervisor,
&c., of Sand-
lake
v.
Supervisor,
&c., of Berlin.

The Supervisors and Overseers of Berlin and Sandlake met pursuant to this section, on the 13th May, 1813, and the officers of Berlin represented that there was but one person, (one Austin,) chargeable to Berlin, the expense of keeping whom was apportioned between the two towns, by a written agreement. Henry Saunders and Lois his wife, who had been occasionally relieved as paupers, by the town of Berlin, before the act passed, and who, at the time of the meeting, resided in a part of Sandlake, which before the act had been a part of Berlin, were not noticed in the apportionment, nor was the attention of the Supervisors, &c., called to this subject, except as it was incidentally mentioned by one of the Overseers of Berlin to one of the Overseers of Sandlake. June 7th, 1813, Saunders and his wife applied to the Over seers of Sandlake for relief, and have since that time been supported by that town at very great expense. H. Saund-ers died in 1816. His wife survived, and is still charge-able. They had lived in that part of Sandlake which, before the act was a part of Berlin, for several years ; were in in-digent circumstances, and during that time had been occa-sionally relieved by Berlin, as paupers. They had been so relieved as late as the winter of 1811 and 1812 ; but had not, at any time, depended solely on the town. From the time of passing the act, to the time when they became chargeable to Sandlake, they had not been in want of public charity, by reason of Saunders' (on sale of a small piece of land which he owned) having received $100. The town of Sand-lake had expended, since Saunders and his wife became chargeable, about $1100 in their support. On finding that they were chargeable to Sandlake, the Overseers of the Poor of that town had often called on the Overseers of the Poor of Berlin for contribution towards their support, which the latter had declined, relying on the apportionment of the 13th May, 1813, as final and conclusive ; and the Supervisor and Over-seers of Berlin had refused to join in any farther apportion-ment, though notice had been given for this purpose pursuant to the act. A bill had been filed by Sandlake in the Court of Chancery, for relief, which was dismissed, on the ground

that if they had any remedy it was at law. (See 5 John. Ch. Rep. 232, S. C.)

ALBANY,
Feb. 1824.

Supervisor
&c., of Sand-
lake
v.
Supervisor,
&c., of Berlin.

*J. P. Cushman*, moved for a mandamus, commanding the Supervisor and Overseers of Berlin to join in making the proper apportionment.

He contended that Saunders and his wife were to be considered paupers of Berlin, at the time when the act passed. It is enough that they had been occasionally relieved. Being the proper subjects of apportionment, if the town officers have omitted to make it, this Court will compel them to proceed and do their duty. (*Hull* v. *The Supervisors of Oneida*, 19 John. 259.) Even if the subject was brought fully before them, and they misjudged upon the question whether these persons were to be considered poor within the meaning of the act, yet a mandamus should go to rectify the mistake. In the matter of *Bright* v. *The Supervisors of Chenango*, (18 John. 242,) the Supervisors had passed upon a Clerk's account for services, and rejected his claim upon the ground that it was not a proper county charge ; and this Court being of a different opinion, enforced the claim by mandamus. It is not necessary to constitute a pauper that he should derive his entire support from the town. It is enough that partial relief is rendered. The moment a man applies for and obtains relief, to any degree, he is considered as a pauper, and the Overseers of the Poor may bind out his children as apprentices or servants. (1 R. L. 136.) Though not actually chargeable on the 13th of May, 1813, they were virtually so. They had been actually chargeable about a year before, and but a few months before the passage of the act, and had undergone no material change in their circumstances.

*D. Buel*, contra. We suppose that as both parties met and made a decision, unless it be very clear that there was not a substantial compliance with their duty, the Court will not interfere. The question arises upon a standing clause in the various acts by which towns have been divided. The powers conferred are temporary and personal in their very

ALBANY,
Feb. 1824.

Supervisor
&c., of Sand-
lake
v.
Supervisor,
&c., of Berlin.

nature; confined to the officers mentioned, and could never have intended to embrace their successors. The legislature did not mean that this duty should be performed by persons who might be wholly unacquainted with the subject. After the lapse of 11 years, we are called on to perform a duty which cannot be discharged with intelligence. If this matter is not to be considered *res judicata*, is it consistent with law or with policy to impose a duty of this nature, peculiarly belonging to the original Supervisors and Overseers of these towns, upon their remote successors? It is plain that this was a matter of discussion on the 13th of May, 1813. If it has been passed upon, the proper remedy is by certiorari, not by mandamus. The case of *Hull* v. *The Supervisors of Oneida*, merely goes to show that where public officers omit to act, you will put them in motion, and compel them to meet if necessary. You will not undertake to guide their discretion. What else can you do here? Suppose these Supervisors and Overseers to assemble; would they not have a right to say, " We will not sit as a court of review upon the acts of our predecessors, who swear that they have decided the very questions now submitted to us : the power was confined to our predecessors ; or, at any rate, they have spent their powers, and nothing is left for us to do ?" If fraud or concealment should be imputed to the original Supervisors and Overseers of Berlin, their successors may say there was no farud—no concealment. To warrant a mandamus, the right of the relator must be clear and unequivocal. ( *The King* v. *The Gov. & Co. of the Bank of England*, 2 Doug. 524. *Mandamus to the Justices and Overseers, &c.* 5 Mod. 420.)

But Saunders and his wife are not to be considered paupers at the period when the act passed. Paupers are always classed as permanent and temporary. It does not follow that because a man is once a pauper he is always a pauper. Did the legislature mean that the commissioners should travel back through a series of years to see who had received a bushel of wheat or other trifling article from the town, to aid him in a state of temporary distress? The clause should be confined to persons actually chargeable at the time when

the apportionment is to be made. This is the only rule of construction which will admit of certainty.

ALBANY,
Feb. 1824.

Supervisor,
&c., of Sand-
lake
v.
Supervisor,
&c., of Berlin.

If there was fraud in the officers of Berlin, in omitting to present this subject to the commissioners, a mandamus is not the proper remedy. The individuals who committed the fraud should be sought out, and made to answer for it in their private capacity. This Court have decided that even a promise to one Overseer of the Poor shall not enure to the benefit of his successor ; and I presume it will not be contended that a claim for a fraud is not only transferable from one set of Overseers to another, but that the successors of the fraudulent party shall be answerable for his acts. In order to grant relief, this Court must look into the accounts of Sandlake for 10 or 11 years past. Is there any precedent for such a proceeding ? Who is to perform the order to be made ? It must go against the present Supervisor and Overseers. Suppose them out of office; upon whom is the mandamus to operate ? Will it bind the whole town of Sandlake ? Or if it is to operate upon the person of the officers for the time being, how are they to be reimbursed ? In England there are means of compelling the town to reimburse their officers for expenses incurred. (2 Salk. 531. 1 Str. 63.) If there is no legal means for reimbursing these men, are they to be thrown upon the honor of the town.

*A. Van Vechten,* in reply. By the 2d section of the act under which this application is made, these commissioners were required to meet, not to perform a judicial but a ministerial act—the apportionment of the poor and poor-money according to the tax-list. They were required to perform a positive duty, which was a mere matter of mathematical calculation. Sandlake being a new town it lay with Berlin to furnish the proper information. Have they done this? If not, they have done injustice, and the injury should be redressed. They mentioned that there was but one pauper and no more. That this was untrue appears from their own acts. They had before relieved Saunders and his wife as paupers. That they were not entered on the books as permanent paupers can make no difference. The object of the act was an

ALBANY,
Feb. 1824.

Supervisor,
&c., of Sand-
lake
v.
Supervisor,
&c., of Berlin.

honest division of expenses.  Would leaving them off the poor-list just before the act passes or just before the apportionment is made, and a consequent refusal to consider them as paupers, satisfy either the terms or spirit of the law ?  Were not these paupers so situated as to require relief?  That the town must ultimately have provided for them is evident from the result; for a few days after the apportionment, without any material change in their circumstances, Sandlake is charged with an allowance of about 200 dollars a year for their support.  Does it lie with Berlin, who had. made repeated provisions for these paupers, to deny that they were the proper subjects of apportionment ?  It is said, the only question was, were they paupers at the time of the apportionment ?  We grant this : but how is it to be determined ?  Because the town may have been relieved from their support for a few weeks, by the private charity of the neighborhood, does it follow that they cease to be paupers ?

Have the officers of Berlin, then, fulfilled their duty ?  Have they united with those of Sandlake in a division of the paupers ?  It is said, this whole matter is *res judicata.*  This we deny.  It was so as to Austin, but the division was confined to him.  It was the duty of the commissioners to apportion the whole of the poor ; and the duty remains as to those paupers who have not been passed upon.  As to these, the obligation imposed by the statute was not fulfilled.

It is objected, that the remedy by mandamus is confined to the individual officers who neglected to act at the day appointed ; and cannot be extended to their successors.  The statute requires the supervisors, &c., to meet on the 13th day of May, 1813, or as soon thereafter as may be.  It refers to the officers, and not merely to the persons holding the offices.  Suppose these commissioners had refused to meet at all; should we have been without remedy ?

It is said, we have waited too long before we came here for a remedy.  But the affidavits show that we have not waited very quietly.  We went to Chancery and were sent back to law.  The delay, therefore, is fully accounted for.  We have called upon Berlin to perform their duty voluntarily ; and there is nothing which looks like a waiver on our part

It is complained, that we seek to punish the officers of Berlin for the fraud of their predecessors; but we ask no such thing. We do not seek to punish fraud. Here is a question between the two towns; and we seek relief against Berlin through the instrumentality of their officers. To whom, it is asked, is the mandamus to go? We answer, to the Supervisor and Overseers of the Poor of Berlin, in their official capacities. It must bind their successors. We ask them to do what they can easily perform—to meet us and make the apportionment. It is said they have a discretion, and what will the court order them to do, when they have assembled? We have answered already—to perform a positive duty by a plain rule, by which they are to make a mere computation of expense. But it is supposed they may not agree; that they may set up their discretion, and refuse to allow any thing, or allow a mere trifle—50 dollars, for instance. But will the Court tolerate this? What is their discretion? To allow a reasonable compensation, according to a given rule. And is not a mandamus the proper remedy? Its object is to compel subordinate officers fairly to do their duty, with a view to the end enjoined : in this case, not that 30 or 500 dollars should be allowed, but that they should make an estimate. A difficulty is started, as to the remedy which the defendants may have for a reimbursement. But if they disburse money in behalf of the town, pursuant to law, the law will give them the remedy. An Overseer of the Poor may be compelled to disburse moneys for the relief of a pauper, upon the order of a magistrate; and he must look to the town. Should the inhabitants of the town refuse to raise the money, this Court would compel them to do it by mandamus.

*Curia.* Saunders and his wife had been occasionally supported as paupers by Berlin ; and both at the time when the act dividing the town and erecting Sandlake passed, and on the 13th of May, 1813, the time of meeting to apportion the expense of maintaining the poor between the new towns they continued, in fact, poor and unable to maintain themselves, though they had not been actually chargeable **for**

Supervisor, &c. of Sand lake.

v.

Supervisor, &c. of Berlin

ALBANY,
Feb. 1824.

Supervisor,
&c. of Sand-
lake.
v.
Supervisor,
&c. of Berlin.

about a year. The relief which they had received was partial, and it was supposed by Berlin that they were not to be considered paupers, and consequently not the subject of apportionment under the act. We think otherwise, under the circumstances of this case. To fix on them the character of paupers, it was not necessary that they should subsist entirely upon public charity. Having been paupers and their circumstances not being substantially changed for the better, they continued the proper subjects of apportionment in 1813. Not having been taken into the account when the division of paupers was made between the two towns, we think this Court competent to compel the Supervisors and Overseers of these towns to do now what they should have done in 1813.

It is proper to observe, that if these commissioners had acted upon the subject, and adjudged that Saunders and his wife were not paupers, we should not have thought ourselves warrantable in interfering by mandamus. But it is inferable from all the papers that this was not done. The subject was incidentally mentioned at the meeting; but the commissioners did not act upon it as a board.

We grant the rule that a mandamus issue, requiring them to make the apportionment of the expense of these paupers, as they should have done in 1813; but without giving any directions beyond this.

RULE:

*George Cipperly*, Supervisor, *Stephen Gregory & George P. Haynor*, Overseers of the Poor of Sandlake,

v.

*William H. Murray*, Supervisor, and *Rodman Thomas & Eliphalet Niles*, Overseers of the Poor of the town of Berlin.

*J. P. Cushman,*
Att'y.

A rule having been granted at the last term of this Court, requiring the Supervisor and the Overseers of the poor of the town of Berlin, in the county of Rensselaer, to show cause on the first day of the present term of this Court, why a mandamus

should not issue against them, to make an apportionment of the expense of supporting Lois · Saunders, a pauper, between the towns of Sandlake and Berlin, in said county, as is required by the act entitled "An act to divide the towns of Greenbush and Berlin, in the county of Rensselaer, into three towns," passed 19th June, 1812; and also requiring them to make a like apportionment of the expense incurred by the said town of Sandlake in the support of Henry Saunders, now deceased, a pauper of said town of Berlin, at the time of the passing of said act, and of the said Lois Saunders since the 7th day of June, 1823; and also requiring the Overseers of the Poor of the town of Berlin to pay to the Overseers of the Poor of the town of Sandlake such share of said expenses as may be ascertained to be chargeable upon the town of Berlin under the provisions of the said act ; and on filing affidavits and other papers in this cause, and on motion of Mr. Cushman of counsel for the plaintiffs, and on hearing Mr. Buel of counsel for the defendants, no sufficient cause being shown, ORDERED, that a mandamus issue against the defendants, William H. Murray, Supervisor, and Rodman Thomas & Eliphalet Niles, Overseers of the Poor of the town of Berlin in the county of Rensselaer, commanding them, &c. (*as in the opinion of the Court.*)