ALBIN ET AL. V. THE BOARD OF DIRECTORS OF THE INDEPENDENT DISTRICT OF WEST BRANCH.

1. **School Districts**: CHANGE OF TERRITORY: ASSETS AND LIABILITIES. Where territory is set into an adjoining county or township, or attached to an independent school district in an adjoining county or township, for school purposes, or is restored from an independent district to the district township to which it geographically belonged, there must be an equitable apportionment of all the assets and liabilities.

2. ———: INDEPENDENT DISTRICT: CHANGE OF BOUNDARY. The boundaries of an independent district may be changed, and such change may include territory which became a part of such independent district at the time of its formation. No reason exists why the boundaries of an independent district, as originally formed, cannot be changed as readily as when territory is afterward attached thereto. ADAMS, J., *dissenting*.

3. **Mandamus**: WHEN IT LIES. Where the board of directors of an independent school district omitted to act upon a petition to restore a portion of the territory included in such district when formed, to the district township to which it originally belonged, and neglected to make any record whatever in respect thereto, *mandamus* will lie to compel action.

*Appeal from Cedar District Court.*

WEDNESDAY, APRIL 19.

THE petition states the plaintiffs reside on the east half of sections one and twelve, in township seventy-nine, north of range five, in Johnson county, Iowa, and constitute two-thirds of the electors residing thereon. That the school-house is not situate on said territory and that the same was formerly a part of the district township of Scott, in Johnson county, but that the same for twelve years last past was set over in the adjoining township of Springdale, in Cedar county, for school

purposes only, and attached to the independent district of West Branch.

That plaintiffs, being desirous to be restored to and become a part of the district township of Scott, presented a petition to the board of directors of said district township, and to the defendants, asking that proper action to that end be taken. That the district township granted the relief asked, but the defendants omitted to act in said matter, and neglected and refused to enter of record or among their proceedings they had refused or granted the prayer of the petition. The plaintiffs ask that a *mandamus* be issued commanding the defendants to restore said territory as prayed in the petition aforesaid.

Certain material allegations in the petition were admitted by the answer, but it was denied that it was the legal duty of the defendants to grant the relief asked. It was stated in the answer the defendant was organized in 1869, and it was composed of territory in Springdale and Gower townships, in Cedar county, and that part of Scott township, Johnson county, which plaintiffs ask to be restored. That afterward and before the commencement of this action, a school-house was erected in defendant's district and an indebtedness incurred therefor, to meet which bonds were issued, which are unpaid, and that other lawful indebtedness has been incurred by said independent district. A demurrer to the answer was sustained and defendants appeal.

*Nourse & Kaufman* and *N. W. Macey*, for appellants.

*Boal & Jackson*, for appellees.

SEEVERS, Ch. J.—I. The eighteenth General Assembly repealed section 1798 of the Code, and enacted the following

1. SCHOOL district: change of territory: assets and liabilities.

in lieu thereof: "That in all cases where territory has been or may be set into an adjoining county or township, *or attached* to any *independent school district in an adjoining county or township*, for school

purposes, such territory may be restored by the concurrence of the respective boards of directors; but on the written application of two-thirds of the electors upon the territory within such township *or independent district*, in which the school-house is not situated, the said board shall restore the territory to the district to which it geographically belongs." Miller's Code, § 1798. The italicized words are additions made by the eighteenth General Assembly. In other respects the section is the same as Code, section 1798. The section as it stood in the Code did not embrace independent districts. *Independent District of Fairview v. Durland*, 45 Iowa, 53. The primary object of the change would seem therefore to be to place independent districts on the same footing as district townships and subdistricts therein. One objection urged against this view is, that independent districts may create indebtedness and issue bonds therefor, and district townships cannot. But this cannot have much bearing on the construction of the statute as between these parties. Besides this we do not think it was the intent of the General Assembly to impair the rights of creditors. The latter are not parties to this action, and their rights cannot be affected by whatever determination may be made. It must be remembered the statute provides where a change is made there shall be an equitable division of assets and liabilities between the old and new district. Code, § 1715. *Independent School District of Georgia v. Independent School District of Victory*, 41 Iowa, 321; *Independent School District of Oakville v. Independent School District of Asbury*, 43 Iowa, 444. But it is suggested the district township of Scott cannot bind itself to pay negotiable bonds. This must be regarded as an open question. What liability has been assumed, or been cast upon the district township in consequence of the restoration of the territory, is not before us. But certain it is there must be an equitable apportionment of all the assets and liabilities. In arriving at such apportionment no part of the assets or liabilities can be excluded.

II. It is insisted the meaning and intent of the statute

is not to include territory which became a part of an inde-
pendent district at the time of its formation, but
includes only such territory as is attached to such
district in other townships or counties, which
should be regarded as temporarily attached, because of streams
or other natural obstacles, which in time may be changed or
obviated.   It is further insisted, "attached to" does not em-
brace a case where the territory originally formed a part of
the district, the argument being, the district must have ex-
isted before any thing could be attached to it.   To attach to,
among other things, means to "connect with," and this, we
think, is the sense intended, for the statute provides, "that
in all cases" the restoration shall be made.   This clearly in-
cludes territory forming a part of the district when organ-
ized, or attached thereto afterward.   We are not called upon
to vindicate the wisdom of the statute, but it may be said,
unless grave reasons exist, territory in one county should not
be attached to another county, for school puropses, and all
such cases should be regarded as temporary, and liable to be
changed at any time.   Such, evidently, is the intent of the
statute under consideration.   It is suggested there is a great
difference between a case where territory forms a part of an
independent district, when it is organized, and territory after-
ward attached thereto, for school purposes.   But the district
was originally formed for school purposes, and nothing else.
The purpose is the same in both cases, and the primary
object sought to be obtained . in the formation, and changes
in the boundaries of all school districts, is precisely the same.
It is not, and cannot, be said all independent districts may
not be abolished.   So may the boundaries be changed in such
manner as the General Assembly may determine.   Why the
boundaries of an independent district, as originally formed,
cannot be as readily changed as where territory is afterward
attached thereto, we are unable to conceive.   Nor can we see
why they cannot be changed as readily as district town-
ships and subdistricts.   The thought that independent dis-

2. INDEPEND-ENT district: change of boundary.

tricts are constituted for the benefit of the inhabitants of cities or towns is fallacious, because the statute provides township districts may be organized as independent districts. Code, § 1814. Of course one independent district may have as high grades in its schools, and as fine a school-house, as any other district. The school-house in independent districts, and subdistricts, is, no doubt, located with reference to the territory embraced therein, when formed, and the house is built. That the boundaries of the latter may be changed, is not disputed, and yet the same arguments against the change could, with the same propriety, be made in such case as where the boundaries of an independent district are changed. To our minds the statute is plain, and its meaning readily understood, and therefore, it is not deemed essential to refer to arguments at greater length, which should be addressed to the General Assembly

III. It is lastly urged that *mandamus* is not the proper remedy, but the plaintiffs should have appealed to the school officers, and *Marshall v. Sloan*, 35 Iowa, 445, is cited in support of this proposition. The distinction between that case and this, is that in the latter the defendants did nothing, while in the former the conclusion reached was entered of record and therefore an appeal could be well taken. In this case there was nothing to appeal from. Besides this it is by no means sure the objection now under consideration was presented in the answer, and therefore, it could not have been considered or determined by the demurrer.

3. MANDAMUS: when it lies.

AFFIRMED.

ADAMS, J., *dissenting.*—In my opinion the conclusion reached, by the majority in this case, is not only wrong, but one the effects of which are greatly to be deprecated. It opens the door for the virtual dissolution of all independent districts which have been formed out of territory lying in more than one township. In my opinion no such result was contem-

plated by the statute. Where an independent district is formed out of such territory it is supposed to be for sufficient reasons. The independent district must, in the nature of the case, be supposed to be formed with a view to permanent integrity. I speak of course of the original construction. No more, nor less, territory is supposed to be taken than the proper construction of the district requires. The grade of the contemplated school, the expensiveness of the contemplated school-house, and perhaps some other matters, must be supposed to have had their influence in fixing the boundaries. So again, when the boundaries are fixed they must be supposed to determine the location of the school-house. The school-house belonging to the Independent School District of West Branch, if properly located, was located with reference to the territory as it now is, and not as it will be when divided. The case is different where an independent district is first formed and afterward territory is attached, as it may be, for school purposes. The district must be presumed to have embraced originally all that ought to belong to it permanently. There was nothing to hinder embracing that much. If territory is afterward attached it must be presumed that the attachment is temporary, and to remain only until, by the construction of roads or bridges or some other change, the inhabitants can be better accommodated elsewhere. When such territory is detached the original district is left. All is left which the original framers deemed necessary, and with reference to which it is presumed that the school-house was built and the grade of the school adopted.

If a secession of original territory is allowable the inhabitants of such territory ought to be allowed to defeat the original construction, and before costly plans had been executed upon the basis of such construction. But they cannot defeat it. The law without question provides for taking in unwilling territory. This must be because it is deemed for the best interest of all. Does the same law provide that the territory can go out the next minute or at any time afterward at its

election? I think not. Such a construction, it appears to me, not only convicts the legislature of an absurdity, but of providing for a great possible mischief. I should hesitate about adopting such a construction if the statute appeared to be more easily susceptible of it than it is. But we cannot, it appears to me, put this construction upon the statute without forcing words from their natural and ordinary meaning. It provides for the restoration of territory which has been "attached to any independent school district in any adjoining county or township for school purposes." Now in the nature of things, territory cannot be attached to a district unless the district exists prior thereto. If the legislature intended to provide for a case where territory had been joined to other territory in the formation of a district, the language used was singularly inaccurate and inappropriate. Again, the case contemplated is one where territory has been attached *for school purposes*. The expression of the object carries an implication that the territory is not an original constitutent part of the district itself.

Independent school districts of the character of the one in question are designed to meet the wants of villages and incorporated towns and cities. The statute providing for their organization seems to contemplate carrying the work of education in them to a higher grade than in district townships. To facilitate them in the erection of permanent and valuable school buildings, they are given the power to borrow money and to issue negotiable bonds. In the case at bar, it is shown that the Independent School District of West Branch borrowed money and issued its bonds. This consideration alone would afford a reason why the integrity of the district should be maintained. It is true, it is said by the majority that the rights of creditors cannot be impaired. They may of course enforce the payment of their claims. Their right of action cannot be taken away. But it is the right and duty of the Independent School District of West Branch to pay without action. Where bonds are issued, the law contemplates that

a sufficient annual tax shall be levied to pay accruing interest and a proportionate part of the principal. This tax is to be voted by the electors of the independent school district at their annual meeting in March. But if the territory in question shall be severed, the electors residing therein cannot vote upon such tax. They will become electors of the district township of Scott in Johnson county. Can the electors of the dismembered Independent School District of West Branch vote a tax upon the tax payers of the severed territory, and cause it to be collected? I think not. Shall the latter then escape, as they doubtless expect to? That would not seem to be right. It is true that in going out, they leave the school-house behind them. But the school-house was built for their own accommodation. Such a school-house may not be needed by the dismembered Independent School District of West Branch.

It is suggested in the majority opinion, that there might be an equitable apportionment of the assets and liabilities. But no distinct liability, I think, could be properly assumed by the severed territory, because it has no distinct organization by which it can provide for it. Nor do I think that a liability in this case could be assumed by the district township of Scott. If it could, it could make itself liable for the payment of negotiable bonds issued for borrowed money, and that, too, when its own bonds would be void for want of power to contract such indebtedness. If the district township of Scott could not properly assume such liability, for a still stronger reason, it ought not to be held that two-thirds of the electors residing upon the territory in question have the power to impose upon it such liability. If, subsequent to the formation of the Independent School District of West Branch, the territory in question had, on account of unbridged streams or other obstacles, been attached to the district for school purposes, and had afterward been restored to the district township of Scott, as it might be under section 1798 of the Code, the assets and liabilities of the Independent School District of West Branch, it appears to me, would have remained with

such district. The attachment, I think, should from the first have been looked upon as temporary. All territory not embraced in an independent district in its original construction must be deemed undesirable as a permanent constituent part. No other evidence of this is needed than the mere fact that the territory is not included, when it might have been, and should have been, if it had been desirable to include it. When, therefore, such territory is restored, nothing is done which should not have been anticipated. Whatever liabilities were in the meantime incurred may well enough, I think, be left to be discharged by the district as originally constituted. The mere restoration of territory which had been temporarily attached to another district for school purposes, is not, I think, within the meaning of the statute, a change of boundaries; and it is only such change that calls for an apportionment of liabilities. But if an original constituent part of an independent district, which may be the greater part, can be allowed to sever itself, at its election, from the district and attach itself to a district township, and leave all the liabilities, incurred as much for the seceding part as any other, to be borne solely by the part of the independent district which remains, it is manifest that a great hardship would be imposed upon such part. As we cannot suppose that the legislature contemplated such a result, and as I am unable to see that it has provided for an apportionment in such a case, I cannot think it contemplated such a case; and I am therefore strengthened in the conclusion already reached, from the mere examination of the language of the statute. In my opinion the demurrer was improperly sustained.