## DAVID D. PARKER v. BOARD OF TRUSTEES OF PORTLAND.

*Approval of liquor bonds.*

Mandamus to compel a village board to approve a liquor dealer's bond will be denied if there is nothing to show that the refusal to approve it was capricious, or to rebut the presumption that the board has fairly passed upon all the questions which determine the sufficiency of the bond and the reliability of the sureties.

Mandamus. Submitted June 17. Denied June 25.

*Allen B. Morse* and *A. A. Ellis* for relator.

*Isaac P. Christiancy* against.

SHERWOOD, J. The petition in this case is for a mandamus to compel the respondents, who are the president and board of trustees of the village of Portland, to comply with his request to approve his liquor bond, tendered by him to them for that purpose. The board, which consists of the president

and six trustees, had previously fixed the penalty in this class of bonds at the sum of six thousand dollars. The petition shows that on the 28th day of April, 1884, he presented a bond to said board in due form and for the necessary amount, signed by himself and two sureties. Each of them made affidavit that he was worth $6000 over and above all indebtedness and exemptions from sale on execution, and all liability on other similar bonds, and the petitioner avers that said sureties were well worth more than $6000 each over and above all liabilities and exemptions mentioned; that the board laid the petition on the table, taking no other action thereon, and adjourned; that on the evening of the 2d day of May following, the board again held a regularly called meeting, and all were present; that the petitioner with his bondsmen attended this meeting, prepared to answer all questions as to their financial responsibility, but none were asked; that said bond was taken from the table and by a unanimous vote it was disapproved, and the action so taken duly recorded; that no reason was assigned by the board for the disapproval.

And the petitioner further represents that in no meeting of the board, nor on the part of any member thereof privately, was there found any fault with the financial sufficiency of the sureties, or either of them; and he further avers that the reason for the board rejecting said bond was because said board was opposed to the sale of liquor under any circumstances, and were under a pledge "not to approve any bonds whatever of this character, without reference to the sufficiency of the bond in form, or the sufficiency of the sureties thereto;" that two members of the board were elected in the spring of 1884 upon a ticket which was claimed by its supporters, and so understood generally, to be a temperance or prohibition ticket, and the members thus elected would not approve any liquor bonds whatever, under any circumstances; that another was elected to fill a vacancy upon the same pledge, and the three others of the trustees held the same views; that privately several members of the board of trustees have said that under no circumstances would they approve any liquor bonds, and "that in fact the

action of the board has been and is taken with the plain and avowed purpose of enforcing the prohibition of the sale of liquors except at drug-stores in the village of Portland, in direct violation of the laws of this State, and in plain and manifest disregard of their duty under the statute and the right of petitioner," and claim the right of the board so to do. He further avers that he is ready to give a good and sufficient bond, as provided by law, at any time when the board shall inform him of any error, either in substance, form or sufficiency of sureties, in the bond already presented, and asks this Court to compel the board to indorse its approval.

The affidavit of Mr. Morse, the attorney for petitioner, shows that he, accompanied by the petitioner and another attorney, appeared before the board in his behalf at a subsequent informal meeting called by the president to consider the subject of the disapproval of the bond, and that Mr. Morse gave the members present his views of the same, and the duty of the board, and respectfully asked them to assign a reason for rejecting the bond presented, and they refused so to do; that afterwards the petitioner's attorneys attended a regular meeting of the board and renewed their application for approval of the bond with the same sureties, and asked the board to assign reasons for its rejection, stating that if any defect or insufficiency existed the petitioner was prepared to submit a new bond; and the board made no response thereto.

Five of the trustees make return to this writ and answer under oath, and say the board at a called meeting took action upon this particular bond and disapproved of the same, without stating their reasons for their respective votes. They admit the presentation of the bond for their approval by Mr. Morse, with the request for a statement of their reasons for their action taken in rejecting it, and that they did not comply with such request, considering the matter already disposed of at the former meeting, and that they were not bound to give the reasons for their former votes.

They further state that the true reason for their refusal to

approve the bond, and which they believe influenced all the members in voting against approval, was that they were not satisfied and did not believe that the sureties were responsible, and this they still believe to be true; and that they were not influenced to refuse their approval for the reason stated in the relator's petition, or under any pledges before or after their election which could in any way interfere with the fair and impartial discharge of their official duties in approving or rejecting any such bond, and that they have never attempted in any of the matters set forth in the petition, or intended to defeat the statute under which the bond is required, or any other law of this State, and they avow their willingness and readiness to carry this law and all other laws touching their official duties, into effect in good faith.

The answer seems to be full, and contains a complete denial of all the material matters contained in the relator's petition.

Municipal corporations are invested with many powers both of a legislative and judicial character, which are usually, in villages, vested in a board of trustees; and there is no doubt about the duty of the courts to compel by mandamus the proper performance of their corporate duties, and compel action upon matters falling within the scope of their well-defined powers. And it is well settled, in all matters resting in the judgment and discretion of such boards and upon which they have actually passed, mandamus will not lie to control their decision or action when made or taken in good faith. High on Ext. Leg. Rem. § 323; *Sandlake v. Berlin* 2 Cow. 485; *Pfister v. Bd. of Com'rs* 82 Ind. 382; *Albin v. Bd of Directors* 58 Iowa 77. When proper action has once been taken in this class of cases, it is not the duty of any appellate court to compel a rehearing. High on Ext. Leg. Rem. § 328.

How. Stat. § 2278[1] requires the relator, before commenc-

---

[1] § 2278. (Sec. 9.) Every person engaged in the sale of any spirituous, malt, brewed, fermented or vinous liquors, except druggists, shall, before commencing such business, and on or before the first day of May in each and every year thereafter, make, execute, and deliver to the county treasurer of the county in which he is carrying on such business, a bond, the

ing the business of selling liquor, to give a bond to the county treasurer, with "two or more sufficient sureties, who shall be freeholders and residents of the village," each of whom shall justify in a sum equal to the amount of the bond, and before it can be received its sufficiency must be determined by the board.

This duty necessarily invests the board with large discretionary power. The things which will create a liability on the bond, if they ever exist, are to arise in the future; and it is to guard against these future contingencies, and to secure future responsibility for an injured party, where a breach occurs, that the bond is made to provide. It will be noticed that the statute not only requires that the sureties shall

---

sufficiency of which shall be determined by the township board of the township, or the board of trustees, or the common council of the village or city in which such business is proposed to be carried on, to the people of the State of Michigan, in the sum of not less than three thousand dollars nor more than six thousand dollars, with two or more sufficient sureties, who shall be freeholders and residents of the township, village, or city in which such business is proposed to be carried on, each of whom shall justify in a sum equal to the amount of the bond over and above all indebtedness, and all exemptions from sale on execution, and all liability on other similar bonds, which bond shall be substantially in the following form :

"Know all men by these presents, that we, ———, as principal, and ———, as sureties, are held and firmly bound unto the people of the State of Michigan in the sum of ——— dollars, to the payment whereof, well and truly to be made, we bind ourselves, our heirs, executors, and administrators firmly by these presents. Sealed with our seals, and dated this ——— day of ———, A. D. 18—.

Whereas, the above-named principal professes to carry on the business of ——— (and describing the place of business) ———, at ———, in the county of ———;

And whereas, the said principal hath covenanted and agreed, and doth hereby covenant and agree, as follows, to wit: That he will not directly or indirectly, by himself, his clerk, agent or servant, at any time sell, furnish, give, or deliver any spirituous, malt, brewed, fermented, or vinous liquor, or any mixed liquor, a part of which is spirituous, malt, brewed, fermented, or vinous, to a minor, nor to any adult person whatever who is at the time intoxicated, nor to any person in the habit of getting intoxicated, nor to any Indian, or any person of Indian descent, nor to any person whose husband, wife, parent, child, guardian, or employer shall forbid the same; and that he will pay all damages, actual and exemplary, that may be adjudged to any person for injuries inflicted upon them, either in person or property, or means of support, by reason of his selling, furnishing, giving, or delivering any such liquors:

Now, the condition of this obligation is such that if said principal shall well and truly keep and perform all and singular the foregoing covenants and agreements, and shall pay any judgment for actual or exemplary damages which may be recovered against him in any court of competent

justify, but that the sufficiency of the bond shall be determined by the board, which evidently includes something more than simply ascertaining the amount of property the sureties are worth. Are they residents of the village? and, if so, how long do they intend to remain such? Where is their property located, and in what does it consist? What is the character of the parties who are sureties? Are they good, honest, reputable citizens, or are they law-breakers and dishonest persons? These and other inquiries suggest themselves as proper for consideration in passing upon the sufficiency of the bond; and when they have all been taken into account in determining the question submitted to the board (as it is presumed they must have been in this case),

---

jurisdiction, then this obligation shall be void and of no effect, otherwise the same shall be in full force and effect.

Signed and sealed in the presence of

———————  [L. S.]
———————  [L. S.]
———————  [L. S]"

There shall also be annexed to each bond required by this act an affidavit of each surety thereto, which affidavit shall state that the affiant is worth a sum equal to the amount of the bond over and above all indebtedness, and exemptions from sale on executions, and all liability on other similar bonds; and if, in the judgment of the township board, or the boards of trustees, or common council of the village or city in which said business is proposed to be carried on, said sureties, or either of them, are not worth the full sum mentioned in said bond over and above all their liabilities, and exemptions and liabilities on other similar bonds, they, the said township board, or board of trustees, or common council of the village or city, as the case may be, shall refuse to indorse said bond with their approval. Such bond shall not be received unless the approval thereof by the township board, or board of trustees, or common council of the village or city, shall be duly certified thereon in writing, and the principal shall not be allowed to sell spirituous, malt, brewed, fermented, or vinous liquors in any other building or place than that specified in said bond without giving notice, and executing another bond in the manner above prescribed. Whenever any condition of said bond shall be broken, a new bond shall be required by the county treasurer with whom such bond was originally filed, and also in case of the death, insolvency, or removal of either of the sureties, and in any other contingency that he shall determine requires it. And it shall not be lawful for any person to sell any of the liquors mentioned in sections 1 and 2 of this act, after being notified by the county treasurer to procure a new bond, until said bond shall have been executed, approved by the proper board, and filed with the county treasurer; and any sale made in violation of this section shall be a misdemeanor, and shall be punished as provided in section 6 of this act; and in all actions brought upon said bond for damages by reason of the violation of any of the provisions thereof, the plaintiff in such action shall, in the event of recovering a judgment of any amount, also recover his costs of suit.

and the board exercising its discretion upon the subject, in good faith and without abuse of such discretion approve or reject the bond, such determination is final and this Court cannot disturb the determination thus made.

Municipal corporations usually speak from the record or by attorney. In this case the decision of the board of trustees was placed upon their record. The reasons therefor, however, do not appear in the record; neither does the statute require any such thing. Still I fail to see any good reason why the board did not give the attorney for relator, or the relator himself, the information he desired. Common courtesy, it would seem, required as much as that, although at the time the information was called for they were under no legal obligation to comply with the request; and had it appeared, as claimed in the petition, that the rejection of the bond was the result of prejudice and caprice, it would have been our duty to grant relief. We however do not find such to have been the fact, and the writ must be denied, but without costs.

COOLEY, C. J. concurred.

CAMPBELL, J. I concur in the result.

CHAMPLIN, J. I cannot concur in the views expressed by my brother Sherwood, nor the result reached by the majority of the Court in this case.

The village of Portland is incorporated under a special charter. No authority is conferred by it upon the board of trustees to prohibit or restrain traffic in intoxicating liquors. The general law of the State recognizes such traffic as legal, but subjects persons engaging in it to restrictive regulations, calculated to protect the public against abuses liable to arise from unrestrained sale of spirituous liquors. Among these provisions is the requirement that every person engaged in the sale of spirituous, malt, brewed, fermented or vinous liquors, except druggists, shall before commencing such business make, execute and deliver to the county treasurer a bond, the sufficiency of which shall be determined by the

township board of the township, or the board of trustees, or the common council of any village or city in which it is proposed to carry on such business, in the sum of not less than three thousand dollars nor more than six thousand dollars, with two or more sufficient sureties who shall be freeholders and residents of the township, village or city, each of whom shall justify in a sum equal to the amount of the bond over and above all indebtedness and all exemptions from sales on execution, and all liability on other similar bonds. The statute then gives the form of the bond, and provides that the bond given shall be substantially in that form. It further provides that the sureties shall make affidavit and annex it to the bond, in which they shall state that they are worth a sum equal to the amount of the bond over and above all indebtedness, and exemptions from sale on executions, and all liability on similar bonds; and if in the judgment of the township board, or board of trustees, or common council of the village or city, said sureties, or either of them, are not worth the full sum mentioned in said bond, over and above all their liabilities and exemptions, and liabilities on other similar bonds, they shall refuse to indorse said bond with their approval. The statute also provides that whenever the condition of the bond shall be broken, a new bond shall be required by the county treasurer with whom such bond was originally filed, and also in the case of death, insolvency or removal of either of the sureties, and in any other contingency that he shall determine requires it.

The provision of the law requiring the board of trustees to determine the "sufficiency of the bond," as well as of the sureties, means no more than that they shall determine whether it complies substantially with the form and conditions specified in the statute. In my judgment these words contain no such hidden meaning as authorizes the trustees, in determining the sufficiency of the bond, to inquire after the intention of the sureties as to the length of time they intend to remain residents of the village. The law has provided for the contingency which might arise of the removal of the sureties from the village, as well as their

insolvency, and authorizes the county treasurer to require a new bond in such case. The character of the sureties, their respectability or their honesty, has no more to do with the " sufficiency of the bond " than the fashion of their clothes or the church they attend. The term "sufficiency of the bond " has reference solely to its legal sufficiency, as tested by the requirements of the statute, and not to the moral character or standing of the sureties in the community. The questions as to what property they have, and where it is situated, are proper in determining the sufficiency of the sureties. The affidavits required by law to be annexed to the bond make a prima facie showing of the sufficiency of the sureties, and if the board of trustees are not satisfied, it is their duty, by further inquiry, either of the sureties themselves or from other sources, to obtain such information as will enable them to act candidly and impartially upon the question of approval.

In passing upon the question of the sufficiency of the bond and sureties the board act ministerially and not judicially. The act of approving or rejecting a bond is essentially a ministerial act, although calling for the exercise of discretion, and when the law devolves upon a board or officer the exercise of a discretion, such board or officer is bound to exercise it in a sound and legal manner, and not in an arbitrary, capricious or oppressive manner. The discretion delegated to the board is a sound legal discretion, the meaning of which is well known and understood in the law, and is not an unlimited license to them to act and do as they please, irrespective of restraint, or in disregard of the rights of parties presenting bonds for their approval. *State ex rel. Attorney General v. Woodson* 41 Mo. 227. The law, by directing the board to refuse to indorse the bond with their approval, if in its judgment the sureties, or either of them, are not worth the penalty of the bond over and above exemptions, etc., imposes upon them the duty of stating wherein they consider the bond, or which of the sureties, insufficient. Common fairness requires this ; but I think the law, by just and reasonable construction, requires it also.

In *People v. Manistee County* 26 Mich. 421, this Court held that the board of supervisors were bound to distinctly record the fact that they reject the claim as not properly admissible, so as to enable the party to obtain a judicial decision whether they are bound to consider it. The present case presents a forcible illustration of the good sense of such construction of the statute. Here the relator presented his bond, duly executed, with the justification of his sureties by affidavits annexed, to the board. They first laid it upon the table, and at a subsequent meeting unanimously voted to disapprove it, without assigning any reasons for their action. They were requested by the attorney for relator to state wherein the bond was insufficient, or whether they regarded the sureties, or either of them, insufficient, but they refused to do so. This left the relator entirely in the dark, and rendered him unable to present a bond which would meet with their approval; and it was not until this Court ordered them to show cause why they did not approve relator's bond, that they gave any reason for not approving the same. The statutes of this State require a large portion of its public officers to give a bond, with sureties, and that these bonds shall be approved either by certain designated officers or boards before they enter upon the duties of the offices to which they have been elected or appointed.

If these officers or boards, upon whom is devolved the duty of approving these bonds, by simply asserting that they disapprove them, without being obliged to state any cause or give any reason, are enabled to block the wheels of government, and because they are vested with a discretion, are beyond the reach of the process of this Court to compel the performance of ministerial duties, it is well the people should know it in order that the Legislature may supply a remedy. As well might the board of supervisors attempt to prevent the exercise, by a person duly elected, of the office of sheriff or of county treasurer, by voting capriciously and arbitrarily to disapprove the proffered bond, as for this village board to prevent the relator from exercising the business of selling liquor by refusing to approve the bond presented, if it

complies with the statute, and the sureties are in fact sufficient.

Relator has an undoubted right to engage in the traffic of selling liquors if he complies with the law; and it is the duty of the respondents to approve a bond which complies substantially with the form of the statute, and which contains the names of sureties whom they, using a legal discretion, shall judge sufficient. I am satisfied from the petition and return, that the board did not, in this instance, use a legal discretion, but on the contrary acted capriciously and arbitrarily, and that their action affects the rights of relator, and unless he is entitled to this writ he is without remedy.