| 121 | 433 |
| d135 | 488 |
| j135 | 492 |
| j135 | 493 |

## DIVINE *v.* BOARD OF TRUSTEES OF VILLAGE OF LAKE-VIEW.

INTOXICATING LIQUORS — VILLAGE TRUSTEES — ACCEPTANCE OF BOND—MANDAMUS.

> The circuit court is without authority to require the board of trustees of a village, by *mandamus*, to approve a liquor bond rejected by them because, in the opinion of a majority of the board, one of the proposed sureties was not financially qualified to act as bondsman, where it does not affirmatively appear that the board acted arbitrarily and not in good faith.

*Certiorari* to Montcalm; Davis, J.   Submitted September 12, 1899.   Decided September 27, 1899.

*Mandamus* by Monroe B. Divine to compel the board of trustees of the village of Lakeview to approve a liquor bond.   From an order granting the writ, respondents bring *certiorari*.   Reversed.

121 MICH.—28.

*George E. Nichols*, for relator.

*Russell A. Peake* (*Walker & Fitz Gerald* and *Myron H. Walker*, of counsel), for respondents.

MOORE, J. This is a proceeding in *certiorari* to review the action of the circuit court of Montcalm in granting a writ of *mandamus* directing the respondents to approve of the liquor bond of the relator. The relator is the keeper of an hotel at Lakeview, in which there is a bar where liquor is sold. In April, 1899, he presented to the respondents a liquor bond in the sum of $3,000, with Mr. Bale and Mr. Peterson as sureties. A motion was made to accept the bond. Three of the trustees voted affirmatively and three in the negative. The president of the village voted in the negative and the board refused to accept the bond. The relator then applied to the circuit court for a writ of *mandamus* to compel them to accept his bond. In his petition he claimed that the bond was in proper form, and was signed by a sufficient number of sureties, who were financially responsible, and that the majority of the trustees rejected the bond arbitrarily, and because they were elected upon the issue of no saloon, and because they were determined there should be no saloon in the village.

The respondents made a return to the order to show cause, in which they denied they had acted arbitrarily or capriciously, and asserted they had inquired into the sufficiency of the sureties to the bond, and rejected it because one of the sureties was not of sufficient financial ability to qualify as a surety. This return was authorized to be made, and was the return of the three trustees and the president of the board, who had voted to reject the bond. Upon the hearing before the court, the attorney for the relator was, against the protest of the respondents, allowed to file his affidavit as to what occurred before the board, and also the statement of the three trustees who voted to approve the bond, in which statement they admitted the truth of the statements contained in the petition of the

relator.   The court made an order, in part, as follows:
"After hearing read the return of a majority of the board
of trustees of said village of Lakeview, and also the re-
turn of the minority of the said board of trustees, and the
court not being satisfied, from the return made and affi-
davits filed with said return, that the majority of the
board of trustees did not act arbitrarily in rejecting said
bond and refusing to approve the same, it is ordered that"
the board meet again, and either approve or reject the
bond.   The board again met.   The relator appeared be-
fore them with counsel.   The village attorney appeared
upon the part of the village.   Affidavits were filed tending
to show that the property of Mr. Peterson was sufficient
to qualify him to act as bondsman.   The affidavits of
three of the trustees and the president of the village, to
the effect that they had personally examined the property
and placing their estimate of its value upon it, were also
read.   Their affidavits would indicate that Mr. Peterson
was not financially qualified to be a surety.   Affidavits
were also filed by two of the trustees that surety Bale,
who owned the Decker House, the hotel where the bar
was kept, had stated to them that he conveyed certain of
the property scheduled by Peterson as assets to him to en-
able him to become surety on the bond.   It also was made
to appear that all the property assessed to Peterson in
1899 was assessed at $725, and that the property conveyed
by Bale to Peterson was still assessed to Bale.   Affidavits
were also filed tending to show that, including the prop-
erty conveyed to Peterson, he was then not of sufficient
financial worth to enable him to become surety.   The
attorney for the relator offered in evidence the deeds
made to Mr. Peterson.   They were not received in evi-
dence, the trustees saying there was no question about
Mr. Peterson having the deeds, but their validity was
questioned.   An opportunity was given to Mr. Bale to
make proof as to why the conveyance to Mr. Peterson
was made, but no proof was offered by him or Mr. Peter-
son upon that subject.   Some other things occurred before

the board which it is not necessary to mention here. The board then adopted a resolution reciting that, after considering all the evidence offered as to the sufficiency and insufficiency of the bond, they rejected it for the reason that one of the sureties was not financially a sufficient surety thereon.

At the second hearing before the board there was a clerk and a stenographer, who took minutes of what occurred. The case was again taken up by the circuit judge. In addition to the return made by the respondents, consisting of a majority of the trustees, there were returned the minutes kept by the clerk and stenographer of what occurred at the second hearing, and the return of two of the trustees, constituting the minority, and other affidavits, which had never been presented to the board of trustees. In the second answer of the respondents they again denied that they had acted arbitrarily or capriciously, and asserted they had acted in the utmost good faith; and that, conceding that Peterson was the *bona fide* owner of all the property conveyed to him by Bale, they did not believe he was worth $3,000 over and above his exemptions and incumbrances. The court found that, taking into consideration all the facts as shown by the affidavits and record, Mr. Peterson was sufficiently responsible, and that the board had acted arbitrarily, and directed that they approve the bond.

It is urged by the relator here that this court ought not in this proceeding to discredit the finding of the circuit judge. It is urged by the respondents that, in the absence of a framed issue, the return of the respondent in a *mandamus* case is conclusive, and the circuit judge had no right to consider anything outside of the return. In our view of the case, it is not necessary to spend any time upon either of those propositions. The statute does not confer upon the court the right to review the accuracy of the conclusion reached as to the financial standing of the sureties offered upon liquor bonds. It may determine whether or not the board has acted in good faith, or

whether it has acted arbitrarily, in disapproving the bond. The court will not compel the approval of a bond unless it affirmatively appears the board has acted arbitrarily, and not in good faith.   *Parker* v. *Board of Trustees of Portland,* 54 Mich. 308; *Wolfson* v. *Township Board of Rubicon,* 63 Mich. 49; *Post* v. *Township Board of Sparta,* 63 Mich. 323, 64 Mich. 597; *McHenry* v. *Township Board of Chippewa,* 65 Mich. 9; *Palmer* v. *President, etc., of Hartford,* 73 Mich. 96.   In this case the record shows there was a fair question as to whether the conveyances made to Peterson were not made for the purpose of enabling him to become surety, and when they had accomplished their purpose the property to be reconveyed. It also shows that, conceding he was the *bona fide* owner of the property deeded to him, men differed in their judgment as to whether or not he was of financial ability to act as bondsman.   Each of these questions was for the solution of the board of trustees, and a majority of them say that they in good faith solved them against the claim of the relator.   Under such circumstances, their action is not to be overturned because a minority of the trustees and the circuit judge think they came to a wrong conclusion.

The writ of *mandamus* should have been refused, and the relator's petition dismissed; and it is so ordered.

The other Justices concurred.