FARR *v.* ANDERSON.

1. LIQUOR BOND—REJECTION—ARBITRARY ACTION—MANDAMUS.
    Where the circuit court, on application for a writ of *mandamus* to compel a village council to approve a liquor bond, found, on issues framed, that the sureties offered were financially able to qualify, and that the council, in refusing to approve the bond, had acted arbitrarily and in bad faith, the writ was properly granted.   GRANT, J., dissenting.

2. SAME—FINALITY OF JUDGMENT OF COUNCIL.
    Under the provisions of 2 Comp. Laws, § 5386, the judgment

of the council as to the sufficiency of the bond is not final, where it appears that, in refusing to approve it, such body acted arbitrarily and not in good faith. *Divine* v. *Board of Trustees of Lakeview*, 121 Mich. 433, distinguished.

3. SAME—PRACTICE.

If the court was justified in finding that the council *did* act arbitrarily, it should not have directed the approval of the bond, but should have remanded the case, with directions to the council to meet, investigate, and pass an honest judgment upon the sufficiency of the sureties. Per GRANT, J.

*Certiorari* to Osceola; McAlvay, J. Submitted November 17, 1903. (Calendar No. 20,142.) Decided. January 26, 1904.

*Mandamus* by Alta Farr to compel Thomas Anderson and others, president and trustees of the village of Tustin, to approve a liquor bond. From an order granting the writ, respondents bring *certiorari*. Affirmed.

*B. N. Savidge*, for relator.

*Gaffney & Stanley*, for respondents.

MOORE, C. J. The conceded facts in this cause are substantially as follows: Alta Farr, the relator, is the wife of R. B. Farr, and is a resident of the village of Tustin. Upon the 4th day of May last she filed a liquor bond, regular in form, with her husband, R. B. Farr, and one O. P. Engstrom, as sureties, who qualified as required by statute. The sureties are freeholders and residents of the village of Tustin. Respondents composed the village council of the village of Tustin. They held a meeting on the 4th day of May, when the said bond was taken up for consideration, but not approved. The council held another meeting May 8th, when the bond was again given some consideration, but was not approved. Relator then applied for and obtained from the circuit court of Osceola county an order requiring the council to meet and approve said bond, or show cause to the said circuit court why it refused

to do so.   Upon the 1st day of June the council met and re-
fused  to approve the bond because of the insufficiency of
the surety R. B. Farr, upon the following vote:  Trustees
Edgett, Harmer, and Lucas voting against the approval
of the bond, Trustees Grummon and Toland voting for
approval, Trustee Pettie not being present.   The council
then answered the petition of the relator, giving its reasons
for its refusal to approve said bond.   At the coming in of
the answer, the court ordered the framing of the follow-
ing among other issues:

1. Has the common council acted in good faith in re-
jecting the liquor bond of relator?

2. Is the surety R. B. Farr worth in real estate situate
within the county of Osceola the sum of $3,000 over and
above all indebtedness, incumbrances, and exemptions
from sale on executions?

A hearing was had before the circuit judge, the wit-
nesses appearing before him.   There was testimony tend-
ing to show that the trustees had acted in bad faith, and
that Mr. Farr was financially able to qualify as a surety.
There was testimony tending to show the converse of
these propositions.   The circuit judge found that the
council had acted in bad faith, that Mr. Farr was finan-
cially qualified to be a surety, and directed that the bond
be approved.   His action is sought to be reviewed in this
proceeding.

It is the claim of a majority of the trustees that they
acted in good faith in rejecting this bond, and that there
is no testimony upon which to base the finding of the
court.   We cannot agree with the contention of the trus-
tees.   It would not be profitable to detail the testimony,
but, as before stated, there was testimony which, if
believed, sustained the finding of the court that the coun-
cil acted in bad faith in rejecting the bond.

It is also the claim of respondents that under the pro-
visions of section 5386, 2 Comp. Laws, the judgment of
the council as to the sufficiency of the bond is final.   In
support of this proposition they cite *Divine* v. *Board of*

*Trustees of Lakeview*, 121 Mich. 433 (80 N. W. 109), and the cases therein cited. A reference to those cases will show they are clearly distinguishable from this one. In none of them was an issue framed. In this one there was. In none of them was it made to appear the board acted arbitrarily, and not in good faith. In this case it was established to the satisfaction of the circuit judge that the board acted arbitrarily. In *Divine* v. *Board of Trustees of Lakeview, supra,* it was said the court may determine whether or not the board has acted in good faith, or whether it has acted arbitrarily, in disapproving the bond. The circuit judge having found bad faith and arbitrary action, his judgment is affirmed. The question involved is one of public importance, which has not before been directly passed upon in this court. For that reason no costs will be awarded to either party.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred with MOORE, C. J.

GRANT, J. (*dissenting*). This is a petition presented to the circuit court to compel the respondents, members of the common council of the village of Tustin, to approve relator's liquor bond. The answer to the petition alleges that the respondents acted in good faith, and that the bond was rejected because of the insufficiency of Mr. Farr, one of the sureties. A replication was filed to the answer, and by the order of the court, against the objection and exception of the respondents, seven issues of fact were framed, as follows:

"1. Has the common council acted in good faith in rejecting the liquor bond of the relator?

"2. Is the surety R. B. Farr worth in real estate situated within the county of Osceola the sum of $3,000 over and above all indebtedness, incumbrances, and exemptions from sale on executions?

"3. Was the bond of said relator referred to a committee on bonds, by the said common council, on the 4th day of May last?

" 4. Was the said bond of relator rejected by the said common council on the 4th day of May last for the reason that relator, the principal in said bond, was a woman, and could not be a principal in a liquor bond ?

" 5. Did the said common council vote on a motion to approve the said bond of relator on the 8th day of May last ?

" 6. Did the said common council act in good faith on said bond of relator on the 1st day of June last, and reject the same for the reason of insufficiency of the sureties thereon ?

" 7. Did the common council determine the sufficiency of the sureties on competent evidence ? "

All the issues were answered in favor of relator.  The sole issue, in any event, for the court to decide, was whether the respondents acted in good faith in determining the insufficiency of the surety.  Questions 2, 3, 4, 5, and 7 were improper.  The answer of either or all in favor of relator would not determine the bad faith of the respondents in finally voting to reject the bond on the ground of insufficiency of the surety.  The respondents alone, under the law, are charged with the duty to determine the sufficiency of the bond.  It was for them to determine whether the three parcels of land owned by bondsman Farr were worth $3,000 over and above his indebtedness, incumbrances, and exemptions.  The testimony in this case is such as to show that the value of this property was a fair question of dispute, and depended upon the judgment of individuals.  There is nothing in the testimony as to values to indicate of itself bad faith on the part of the respondents.  Witnesses differed as to value. Some of them for relator made the property worth $5,500. The debts, one of which was secured by mortgage upon one parcel of the land, amounted to $1,040.  The homestead exemption would leave the property worth little, if any, more than the required amount, under the highest estimate.  The evidence on the part of the respondents showed its value much less than that required by the statute.  The assessment roll showed the value of the three

parcels to be $1,450. One of the chief arguments on the part of relator to show that the action of the board was capricious and arbitrary is the value of the property as placed upon it by her witnesses. This, then, is the situation: The bondsman's property is assessed by a sworn officer of the law at a cash value of $1,450; his indebtedness is $1,040; and yet a court or jury finds that its real value is three or four times its assessed value, and from that finds that the officers of the law acted arbitrarily. Such inquiry and determination assume a function solely conferred by the law upon the officers of municipalities. It undoubtedly is entirely proper, in determining the character of the action of the officers, to show the value of the property, and, when it is undisputed that the property is worth much more than the amount required, the court or jury may consider this in determining the question of good or bad faith. But this cannot be used as evidence of bad faith when there is a fair dispute as to the value of the property, and that is this case. The duty to make that determination is with the officers.

It was said in the majority opinion in *Parker* v. *Board of Trustees of Portland,* 54 Mich. 308 (20 N. W. 55), that:

" This duty necessarily invests the board with large discretionary power. The things which will create a liability on the bond, if they ever exist, are to arise in the future; and it is to guard against these future contingencies, and to secure future responsibility for an injured party where a breach occurs, that the bond is made to provide. It will be noticed that the statute not only requires that the sureties shall justify, but that the sufficiency of the bond shall be determined by the board, which evidently includes something more than simply ascertaining the amount of property the sureties are worth."

In an opinion written by the late Justice LONG, and concurred in by the entire court, it was said that this duty "is something more than ministerial; it is the exercise of judgment and discretion." *Amperse* v. *Winslow,* 75 Mich. 234 (42 N. W. 823). This judgment and discretion

cannot be taken away by a finding of a court or jury that the property is in fact worth enough to justify the bond.

The officers are not bound by the evidence, competent or incompetent, that is produced before them. They may investigate themselves, and exercise their own knowledge and judgment as to the value of the property. The respondents in this case knew the property, and were competent to determine its value. The examination to be made by these officers does not require the consideration only of "competent evidence," according to the rules of evidence in a suit at law, yet that seems to be the requirement of the seventh question. It was said in *Palmer* v. *President, etc., of Village of Hartford,* 73 Mich. 96 (40 N. W. 850):

"They [the president and trustees of the village] may investigate the facts for themselves, using their own knowledge, or any other evidence that may satisfy them upon the question."

It was wholly immaterial whether this bond was referred to a committee of the council, or whether it was once rejected for the reason that the principal was a woman, and therefore disqualified to carry on a saloon. Men unfamiliar with the statute might very naturally and properly raise this question. The fact that the respondents raised it—and I find no evidence that it was raised in bad faith—does not determine their bad faith in afterwards rejecting the bond for insufficiency of sureties. So whether they voted on a motion to approve the bond at any other time was immaterial. This disposes of all the special issues except that as to the good faith in rejecting the bond.

The testimony in this case covers 209 typewritten pages, and a large part of it is devoted to testimony as to the value of the land. And the briefs of counsel are largely occupied with the testimony upon this question, claiming that it shows bad faith of the respondents. Where testimony taken before the board showed a value of $7,500,

with debts of $700, and there was testimony showing it much lower, this court held, speaking through Chief Justice CAMPBELL, that it would not interfere. *Wolfson* v. *Township Board of Rubicon*, 63 Mich. 49 (29 N. W. 486). I find no case in which the course pursued by the court below in this case has before been adopted, namely, to frame issues to determine the good or bad faith of the municipal officers. In many cases we have sustained the action of the officers, in which we have said that, in the absence of bad faith and arbitrary action, their finding was conclusive. This is negative authority. The statements were not necessary to the determination of the cases. We have also held that, where there is no contention about the sufficiency of the sureties, but the officers have refused to approve the bond for other arbitrary and capricious reasons, the writ of *mandamus* should issue to compel approval. These cases have not determined to what extent courts may go in determining whether the officers have acted in good faith in passing upon the sufficiency of the sureties. In *Divine* v. *Board of Trustees of Lakeview*, 121 Mich. 433 (80 N. W. 109), testimony was taken before the board, and that testimony reported with the return for writ of *mandamus* to the circuit court. The case in many of its features is like this. There was also a return of two trustees in opposition to the return of the majority. We there said, speaking through my Brother MOORE:

" The statute does not confer upon the court the right to review the accuracy of the conclusion reached as to the financial standing of the sureties offered upon liquor bonds."

True, it was there said that the court might determine whether a board has acted in good faith or arbitrarily in disapproving a bond. No case has yet decided that the court may determine the disputed question of fact as to the sufficiency of the sureties, even if the officers have acted arbitrarily. If, in this case, the respondents had refused to approve the bond for the reason that the principal

was a woman, could the court have determined the suffi-
ciency of the sureties and ordered the approval of the
bond, or should the court have directed them to assemble
and pass an honest judgment on the sufficiency of the
sureties?

It is claimed on the part of the relator that some of the
respondents made certain statements hostile to relator's
husband, one of the bondsmen, and that these statements
tend to show arbitrary action on the part of the respond-
ents. It is due to the respondents to say that they deny
all such statements, both in their answer and under oath.
May a court take these statements, even if found to be
made, as evidence of bad faith, where there is a reason-
able dispute as to the value of the property? I think not.
There is the same difference as to value in this case that
there was in the *Divine Case*. The only difference be-
tween the two cases is that in the one case it comes before
us on issues made and determined by the circuit judge,
while in the *Divine Case* it came before the court with-
out the intervention of framing the issues. In *Bailey* v.
*Van Buren Circuit Judge*, 128 Mich. 627 (87 N. W. 890),
the good faith of the township board in refusing to accept
the bond of a druggist was attacked, and the relator asked
an issue to determine whether the board acted in good
faith. Under an answer similar to that in this case, this
court denied the application to permit such an issue. The
return in that case, as in this, stated that the board were
willing to accept a bond if the sureties were, in their hon-
est judgment, financially responsible.

In the case of *Briggs* v. *McKinley*, 131 Mich. 154 (91
N. W. 156), a majority of the board approved the bond of
a saloonkeeper, and it was claimed by a minority of the
board—the relators—that they made no investigation, and
passed no honest judgment; that the principal in the bond
was in fact the bartender; that the principal bondsman
was in fact the saloonkeeper; and that the bondsmen did
not possess the necessary financial responsibility. In that
case, as in this, it was charged that the respondents used

language fully as strong as in this case to indicate that they did not act in good faith in approving the bond; yet this court did not interfere.

In my judgment, the relator failed to make a case of capricious and arbitrary conduct on the part of the respondents, and the judgment of the court below should be reversed, and the petition dismissed. If, however, it should be determined that the board did act arbitrarily, I think, for the reasons above stated, the order of the court below should have been to remand the case, and direct the respondents to meet, investigate, and pass an honest judgment upon the sufficiency of the sureties.