ELLERY J. POTTER v. COMMON COUNCIL OF VILLAGE OF HOMER.

*Mandamus—Return to order to show cause—Lawfulness of the liquor traffic—Approval of liquor dealer's bond—Power and duty of council—Practice.*

1. Respondents should set forth in their return to an order to show cause the facts relied upon in justification of the non-action complained of, and not in individual affidavits appended to return, which are properly no part thereof.

2. The terms on which liquor may be sold in this State are determined by the Legislature, which has made it lawful for any one residing in any place not within the village local option law, to carry on the business by complying with the statutory conditions.

3. "The statute did not design that the lawfulness or unlawfulness of the traffic should be determined by a common [village] council, or that the power to do business should depend on their pleasure. The statute itself has fixed the conditions, and nothing is left to the council except to pass upon the sufficiency of the sureties. But this is only so far within their discretion that they may inquire, where there is substantial reason to do so, beyond the mere general averments of the affidavits of justification. In this they have the same discretion, and no more, that is possessed by other persons called on to approve sureties. They have no right to disregard affidavits without legal proof, or reject sureties without at once giving the reason, and a speedy opportunity to meet the facts or supply others. It is tyrannical as well as unlawful to hinder any one who is ready to furnish security from conducting his lawful business."

4. The only redress this Court can give for an evasive answer to an order to show cause is a peremptory mandamus and costs: *Fletcher v. Kalamazoo Circuit Judge*, 39 Mich. 301.

Mandamus. Submitted Oct. 23, 1885. Granted January 13, 1886.

Relator applied by petition for a writ of mandamus to compel the common council of the village of Homer to approve a liquor dealer's bond. An order to show cause was granted to which respondent made a return which was demurred to by relator for insufficiency and for other causes set forth in the demurrer. The remaining facts are stated in the opinions.

*L. B. Tompkins* and *Miner & Stace*, for relator:

The proper mode of taking advantage of an insufficient return to an order to show cause is by demurrer : How. Stat. §§ 8663–64 ; *Com. v. Commissioners*, 32 Penn. St. 218 ; 27 Md. State, 320 ; 32 *Ib.* 32 ; 42 *Ib.* 480 ; and the form and sufficiency of the several pleadings must be governed by the same rules which prevail in other civil actions : *State v. Jennings*, 56 Wis. 113 ; *People v. Ohio Grove Town*, 51 Ill. 191.

Such return must state the facts relied upon in justification positively and not by way of recital : Angell & Ames on Corp. 11 ed. 775–6 ; *Gorgas v. Blackburn*, 14 Ohio, 252 ; *Com. v. Commissioners*, 32 Penn. St. 218 ; *Merrill v. State*, 45 Miss. 651 ; and if confession and avoidance be intended all necessary facts should be distinctly stated, and not left to inference : *Com. v. Commissioners*, 37 Penn. St. 239 ; *Com. v. Guardians of the Poor*, 6 Serg. & Rawle, 469 ; *Iowa v. Jones County Judge*, 10 Iowa, 65 ; *Commissioners v. State*, 61 Ind. 81.

Every intendment is made against such a return, which fails to answer the important facts : *People v. Kilduff*, 15 Ill. 492 ; and the presumptions are against the respondent : *Merrill v. State*, 45 Miss. 651. It is the duty of a ministerial officer to obey an act of the legislature directing his action, not to question or decide upon its validity : *People v. Salomon*, 46 Ill. 333.

*Blair, Wilson & Blair*, for respondents:

The entire good faith and sincerity of respondents in acting under the statute confiding to them the duty of protecting the interests of the community which has placed them in office, is not impeached by the record. The law recognizes the dangerous character of the liquor traffic and has devised the scheme of bonding and taxation for the protection of the community, and confided to the council the

duty of considering and acting upon applications for approval of liquor dealers' bonds: How. Stat. § 2278.

In pursuance of the general policy of the State, the village has the power to *suppress* saloons for the sale of spirituous and intoxicating liquors: Public Acts of 1883, page 43. The extent of the discretion vested in the council in such cases is fully considered in *Parker v. Portland*, 54 Mich. 308.

CAMPBELL, C. J. On the seventeenth day of June, 1885, an alternative order was granted by this Court requiring respondents to approve the liquor bond presented to them for approval by relator, or to show cause why a peremptory mandamus should not issue to compel such approval. This order was made on a showing that the respondents had fixed the penalty for such bonds at $5,000; that relator, being engaged in the business of selling liquors, presented to respondents, on May 4, 1885, a bond in due form, signed by himself, and by Edwin Potter and Thomas Rainey, residents and freeholders of Homer, and having the statutory affidavit of justification; and that respondents refused to approve it, and gave no reason, except the insufficiency of the justification. On the fifth of June he presented to them another bond, with the same sureties, and with an affidavit which not only contained the statutory averments of sufficiency, but also averred that they were residents and freeholders of the village. Upon this respondents refused to act, and adjourned without acting, and entered and gave no reasons for so doing. The petition avers every fact which would entitle the relator to do business, and shows the sufficiency and residence of the sureties; and states some things reported to have been said by particular trustees, one saying that relator was not the real owner of the business, and two saying that one of the sureties had not been a resident long enough. All of these pretenses relator denies, and appends to his petition several corroborating affidavits.

The official return of respondents gives no distinct reason why they did not approve the bond when presented, except that they thought they had some discretion which they should exercise for the public good; and avers that they

have always been ready to accept a good and sufficient bond, and have not acted oppressively.  They say that, at the meeting of June 5, " it was apparent that the adjournment was had without action on the bonds for the reason that the trustees desired further time for consideration, as two motions were made of an opposite character—one to approve of the bond, and the other to reject it; and neither of the motions was supported, and therefore no vote was had upon either."  It further avers that, after this meeting adjourned, relator took his bond away with him, and has not since appeared before them, or made any request or proposition in regard to it.  It is further stated that while various motions were made, they do not appear on the records of the council, as they are not in the custom of entering any motions or resolutions that are not supported and voted on.  The return has appended to it a copy of the council minutes, from which the following is all that appears:  On April 3d the penalties of liquor bonds were fixed at $5,000.  On May 1st it is recited that relator's liquor bond was presented, but no action had, because of the insufficiency of the affidavit of justification.  On the second and fourth days of May motions were made and lost to approve it.  On June 5th the minutes state that, at a full meeting, relator's bond with the sureties named, was presented by the president, and trustee Higby moved that the bond be accepted, which motion received no support.  Trustee Goodrich moved to refer it to a committee, which motion received no support.  Trustee Carr moved to reject it, which motion received no support.  On June 22, 1885, the order of this Court was brought to the attention of the board.  Trustee Andrews moved that action be taken on the bond, which prevailed.  Trustee Higby moved to accept the bond.  Mr. Andrews called for the yeas and nays.  Mr. Allen, who is president, and Mr. Higby voted "aye."  Trustees Carr, Bradley, Pratt, Andrews, and Goodrich voted " nay."  A resolution was then passed to employ counsel to defend the case.  No action seems to have been taken at any time to put on record, or to provide for expressing, in an answer to our

order, any cause or reason for the refusal of the respondents to approve the bond. The return signed by the president and recorder gives none.

Instead of setting forth, as the order required them to do, the facts in their answer, which are supposed to justify them, certain individual affidavits are appended, which set out facts not so stated, and which are as follows: Trustee Bradley states that he understood and believed, but gives no facts or source of information, that Edwin Potter was the real owner of the business, and relator the colorable owner; and that there are rooms over the saloon which "he has good reason to believe, and does believe, were usually kept open on Sundays, and liquor sold there;" and that while the matter of the approval of the bond was pending before the council, and to ascertain whether some accommodation could not be made, affiant asked relator if he would shut up the rooms Sunday, and obey the law by keeping his saloon shut at hours required by law, and relator replied he would not. This affidavit states no facts or sources of information, and does not show that these things were considered by the common council. Two affiants, not members of the council, Henry H. Shear and Lewis Yinger, swear to their belief that though Rainey claims to be a resident of Homer, and rents a house there, he is really an outside resident. Their statements are not such as would be any legal evidence to that effect, and they were not made to the respondents, but are sworn to on July 29th, when all the other papers were dated, and when counsel gave notice of retainer for the defense.

Carr, Goodrich and Pratt, after some reference to the bond presented to the county treasurer in the previous year, which was approved by the council, and which has no bearing on this case, aver that in the early part of 1885, before the present fiscal year, relator was convicted of a violation of law in keeping his saloon open after nine o'clock. They state that they are acquainted with the real estate owned by Potter and Rainey, in their affidavits for justification, and consider it considerably exaggerated. No real estate was in

fact described or valued at all in those affidavits, although there were such statements appended to the application made to this Court. It is not averred in any way that either Rainey or Edwin Potter is not worth all that was sworn to in the justification made under the statute. Affiants also set up some facts in regard to residence and freehold of Rainey, which show that he rents a house and claims to be a resident, and that he was, when he justified, a substantial freeholder, and was previously a small freeholder. They then set out "conscientious doubts," and various other reasons, but no facts which are material.

These appended affidavits, although not properly a part of the return, contain nothing whatever to show that Rainey and Edwin Potter are not, and have not been throughout, resident freeholders of sufficient responsibility to satisfy the statute. There is nothing in the return to show that the council supposed, or acted on the supposition, that they were not sufficient and eligible. No cause is shown, or attempted to be shown, in any responsible form, why the council did not, in the first place, or afterwards, when they received our order, approve the relator's bond. Their conduct is reprehensively evasive, and open to censure.

The Legislature, and not the common council, has the right and has exercised the duty of determining on what terms liquor may be sold. It has made it lawful for any one residing in any place not within the village local option law, to carry on the business upon paying to the county treasurer an annual tax, and filing with him a bond in the sum of not less than $3,000 nor more than $6,000, with two resident freeholders as sureties, who are required to justify in the form fixed by statute, and have the bond approved by the common council, or other local trustees. It was not designed by the law that the lawfulness or unlawfulness of the traffic should be determined by a common council, or that the power to do business should depend on their pleasure. The statute itself has fixed the conditions, and nothing is left to the council except to pass upon the sufficiency of the sureties. But this is only so far within their discretion that

they may inquire, where there is substantial reason to do so, beyond the mere general averments of the affidavits of justification. In this they have the same discretion, and no more, that is possessed by other persons called on to approve sureties. They have no right to disregard affidavits without legal proof, and they have no right to reject sureties without at once giving the reason, and giving a speedy opportunity to meet the facts or supply others. It is tyrannical as well as unlawful to hinder any one who is ready to furnish security from conducting his lawful business.

In our opinion, the conduct of respondents is oppressive and inexcusable, and involves a clear violation of the duties of their office; and the manner in which they have acted since the order to show cause was granted is very censurable. As we granted an order instead of an alternative writ, we cannot, in this proceeding, give any further redress than a peremptory mandamus and costs: *Fletcher v. Kalamazoo Circuit Judge*, 39 Mich. 301. It would not be proper to make any further suggestions on this hearing.

The writ is granted, with costs.

CHAMPLIN and MORSE, J. J., concurred.

SHERWOOD, J. (*dissenting*). The relator is a resident of the village of Homer, in this State, and engaged in the business of selling liquor therein. By the statute no person, except druggists, is permitted to carry on such business without first executing and delivering to the county treasurer a bond in a sum of not less than $3,000, nor more than $6,000, "with two or more sufficient sureties, who shall be freeholders and residents of the township, village, or city in which the business is proposed to be carried on, each of whom shall justify in a sum equal to the amount of the bond, over and above all indebtedness, and all exemptions from sale on execution, and all liability on other and similar bonds." The bond requires "that he shall not, directly or indirectly, by himself, his clerk, agent, or servant, at any time, sell, furnish, give, or deliver any spirituous, malt,

brewed, fermented, or vinous liquor, or any mixed liquor, a part of which is spirituous, malt, brewed, fermented, or vinous, to a minor, nor to any adult person whatever, who is at the time intoxicated, nor to any person in the habit of getting intoxicated, nor to any Indian, or any person of Indian descent, nor to any person whose husband, wife, parent, child, guardian, or employer shall forbid the same; and that he shall pay all damages, actual and exemplary, that may be adjudged to any persons for injuries inflicted upon them, either in person or property, or means of support by reason of his selling, furnishing, giving, or delivering any such liquors;" and the condition of the bond is, if he violates either or any of said requirements, he shall pay any judgment for actual or exemplary damages which may be recovered against him for such breach, and until he does so the bond is to remain in full force against the bondsmen: How. Stat. § 2278.

The relator shows, by his petition, that the common council of the village of Homer, on the third of April, 1885, fixed the penalty of liquor bonds for the year ensuing at the sum of $5,000; that, desiring to carry on, or rather, continue, the business, the relator, on the fifth day of June, presented to the common council, while in session, his bond for that purpose, for approval in pursuance of the statute, signed by his brother and one Thomas Rainey, two reputable citizens, residents and freeholders in said village, as sureties thereon; that this bond was disapproved by the council for the reason stated that the affidavits of justification were insufficient; that at a subsequent meeting, held on the fifth day of June, the relator presented to the president, recorder, and trustees of the village a new bond, made and executed by himself, in the like sum, and with the same sureties as before, and requested its approval by the common council, then in session; that said council has never approved or rejected said bond, and has taken no action thereon.   The relator further states in his petition

"that the said sureties, and both of them, are actual residents of the said village of Homer; that the said Edwin Potter has resided therein for over twenty years now last

past, and is a permanent resident thereof, having no other home, and having no intention of removing therefrom, to the knowledge or belief of your petitioner; that the said Thomas Rainey has within the past year removed from the township of Homer into the village of Homer, with the avowed intention of making said village his future permanent home, and he has no intention, to the knowledge or belief of your petitioner, of removing therefrom; that the property of said sureties consists principally of real estate, situated partly in said village of Homer, and partly in the township of Homer, outside of said village, none of which is distant more than about five miles from said village; that neither of the sureties have any interest whatever in the business aforesaid of your petitioner, aside from their liability on the said bond, and that both of the said sureties are good, honest, and reputable citizens, and are both of them of unimpeachable reputation for integrity and veracity."

Several affidavits accompany the petition of the relator which strongly corroborate the above statements regarding the character, standing, and pecuniary responsibility of the sureties, and further showing the petitioner to be a man of good reputation and habit, and upright and honest.

Upon the petition, made the thirteenth day of June, this Court issued an alternative order requiring the common council (the respondent) to approve the bond, or show cause why a peremptory mandamus should not be issued. The respondents have not approved the relator's bond, but make a return to the writ, which is demurred to by relator's counsel.

The return, though somewhat informal, is not particularly objectionable upon that ground, and the exhibits and certified copies thereto annexed must be taken as part of the return, which is made by the president and recorder of the village, the writ having been directed to be served upon the president of the village. From the return, it appears that the first bond offered for approval was rejected, and the record of the proceedings of the council show that at the meeting of May 1st, when the bond was presented, no action was taken thereon, because of the insufficiency of the affidavit relating to the sufficiency of the sureties; that, at a

special session of the council the next day, on a motion to approve, the bond was not approved, and at a meeting of the council on the fourth day of May motion was again made for the approval of relator's bond, and was lost.

The president and recorder say as to these votes:

"They have no means of knowing, and do not know, the reasons of the said trustees individually for the several votes given by them, as there was no discussion, and no reasons were given at the time, but they believe that the said trustees acted conscientiously, and voted against the approval of said bond on account of their doubts of the sufficiency of said bond and the responsibility of the sureties therein; that the said trustees believed that they had some discretion in the matter of such approval, and that they ought to exercise it in such a manner as to protect the public interests committed to their charge; that the board were and always have been willing to accept a good and sufficient bond, and are still willing to do so; and they have not acted oppressively and without cause."

On the eighteenth day of May a new bond was made and executed, with the same sureties, and presented to the council for approval. In relation to the action taken upon this bond, the record of the council says:

"Moved by trustee Higby that the bond be accepted and the sureties approved, but which motion received no support. Moved by trustee Chadwick that the bond be referred to a committee for investigation, but which motion received no support. Moved by trustee Carr that the bond be rejected, but which motion received no support; and there was no further action taken upon said bond."

The president and recorder say in their return, in regard to this action,

"that at the meeting of the board on the fifth of June it was apparent that the adjournment was had without action on the bond, for the reason that the trustees desired further time for consideration, as two motions were made of an opposite character—one to approve of the bond and the other to reject it; and neither of said motions was supported, and therefore no vote was had upon either; that after the adjournment of the meeting, on June 5th, the

attorney of the relator took his bonds and affidavits away from the possession of the board, and has not since appeared before them, or made any request or proposition in regard to the same; that the various motions by different trustees were made at the session of June 5th, in reference to said relator's first bond."

Without waiting for further action or deliberation, the relator applied for the writ in this case on the thirteenth day of June. The common council consisted of the president and six trustees.

The section of the statute requiring this bond provides that there shall be annexed to the bond

"an affidavit of each surety thereto, which affidavit shall state that the affiant is worth a sum equal to the amount of the bond, over and above all indebtedness and exemption from sale on execution, and all liability on other similar bonds; and if in the judgment of the township board, or the board of trustees, or common council of the village or city in which said business is proposed to be carried on, said sureties, or either of them, are not worth the full sum mentioned in said bond, over and above all their liabilities and exemptions, and liabilities on other similar bonds, they, the said township board, or board of trustees, or common council of the village or city, as the case may be, shall refuse to indorse said bond with their approval."

From an examination of the statutes above referred to, it cannot fail to be noticed that two things are required to be passed upon before the bond can be approved. The first is the sufficiency of the bond; and the second, the sufficiency of the sureties: both are included in the approval of the bond required. The statute gives the form for the bond; and under the first requirement above stated, it has been said that the statute is satisfied, and its conditions fully complied with, when the form is followed and the applicant's affidavits of justification are attached to the bond. I am not able to concur in this view. I think this construction entirely too narrow. For instance, were the bond in strict compliance with the form given, and the sureties residents of the place with the principal, residing in homesteads of their own, worth a thousand dollars, and each owned $10,000

worth of property located outside of the State, each could justify under the letter of the statute; but would any one regard such as sufficient sureties, or could the bond be held sufficient? I think not. Suppose, again, these same sureties had all their property with them when they executed the bond, but the next day after they signed the bond and made the required affidavit they left the State, and their intention to do so was well known to the council when they approved the bond, could it be regarded as sufficient? Or, suppose the sureties intended immediately to send their property to Canada for permanent investment, could such sureties, under such circumstances, be regarded as sufficient, or the bond a sufficient bond? I cannot conceive that any one could so regard it, if the object or intention of the Legislature in passing the act has anything to do with its construction. Again, suppose the sureties were notorious gamblers, carrying their money upon their persons, and not being at their places of residence three days in a year; could such a bond, with such sureties, be held sufficient? I apprehend no person would so hold. The error would be too gross.

Now, the bond, with such sureties as I have supposed in all these cases, would be in compliance with the form and letter of the statute. It would be valid. The sureties in each instance would actually be worth the necessary amount of property, and each could make the affidavit of justification, but it would no more be a compliance with the spirit of the law or object of the statute than it would were the homesteads all the property the sureties owned. It would be entirely insufficient, because the property of the sureties would be located beyond the limits of the operation of the statute, and a board which would approve such a bond would be held derelict indeed. The object of the law is twofold— *first*, to confine the sale of liquors to honest and responsible persons, to the end that the evils of intemperance may be avoided; *second*, to secure those who may suffer from violations of the law by those intrusted with the sale of liquors to the extent of the amount of the bond. Both of the objects would be completely defeated by accepting the bonds of

sureties such as I have described. Every beneficial object and purpose of the law would be defeated by the acceptance of bonds with insufficient sureties. Under a reasonable and proper compliance with the law, the sale of intoxicating liquors becomes a legitimate business; and it is due to those · engaged therein, as well as to the unfortunate class who must suffer most from violations of the law, that it should be administered in such manner as to secure the object intended by the Legislature.

Under the second requirement—" the sufficiency of the sureties "—it is claimed that where the relator presented his bond with sureties, with affidavits of justification attached as to their responsibility, it was then the duty of the board to indorse their approval. If this were so, only the form of the bond and affidavits would need to be passed upon before indorsing the required approval, but that is not the spirit or language of the statute. It requires *the sufficiency* of the sureties to be passed upon by the council *after* the bond has been presented to them, with the affidavits of the sureties as to their responsibility thereto attached. These sureties are required to be residents of the town, village or city where their principal proposes to carry on his business. This was undoubtedly for the purpose of more easily enabling the council to ascertain their pecuniary responsibility, because of their supposed familiarity with the sureties themselves, whether they are honest or dishonest; that they may know better how much credence to place upon their affidavits presented with the bond. If the council knew, or honestly believed, and had good reason for such belief, that the affidavits of the sureties were untrue—that their property was worth less than the statutory requirement — it would undoubtedly be their duty to withhold their approval of the bond, in my judgment.

The violations of the statute which would give right of action to parties injured must necessarily arise in the future, and it may be a long time after the giving of the bond. This fact alone is sufficient to require close scrutiny as to the character of the sureties, the kind of property they own,

and their relations and intentions relating thereto; whether such property is liable to early depreciation, to what extent the owner has increased it, and whether he intends to retain it within the limits of the State. These, arfd all the other considerations which a careful, prudent man would naturally give to the subject in taking a bond or note for money loaned, are entirely proper for the council to take into account in determining the sufficiency of the sureties. The manner of ascertaining the responsibility of the sureties is left entirely with the council after the bond and affidavits of the sureties are presented. They are not required to examine the applicant or his bondsmen, except at their own discretion; and the statute evidently does not contemplate any trial before the council, or any other tribunal or person, and no record of their doings upon this branch of their duty is required to be kept; and if any reasons were required to be given for disapproval, none seem to have been asked for in this case until the relator's petition was filed for the issue of the writ in this proceeding. It is a fact that cannot be ignored that, not unfrequently, much fraud and circumvention is resorted to in securing an approval of this class of bonds, whereby insufficient sureties have been received, and injured parties have lost all redress from violations of the law; and it is very often a difficult matter to ascertain the actual responsibility of parties offered as sureties, who succeed in making a *prima facie* showing when they are utterly worthless.

The relator avers that no legal reason exists in this case for withholding the approval of the board; that no reasonable or legal objection can be made against the sufficiency of his sureties; and that the action of the board, in withholding its approval of his bond, is unreasonable, capricious, without cause or excuse, and oppressive. The bad motives attributed to the council are denied in the return; and it expressly appears therein that the council " were and always have been willing to accept a good and sufficient bond," and their disapproval of the relator's bond was on account of the doubts the members of the council entertained of its sufficiency and

the responsibility of the sureties, and that they have not acted oppressively nor without cause. It also appears from the affidavits of three of the council that the relator carried on the business of selling liquor in the village of Homer in 1884, and filed a bond for that purpose, with his brother Edwin Potter and one John Maston as his sureties; that they are informed and believe that Maston was never a sufficient surety, and was altogether irresponsible; that he was not a *bona fide* freeholder or resident of the village, but was brought to the village by the Potters for the purpose of being made such surety, and that he had conveyed to him a small piece of marsh land in the village, not worth over $25, for that purpose, and that, in procuring such bond, the common council was imposed upon by the relator, that during the year of his license the relator was convicted before a magistrate for a violation of the liquor law, upon his own confession of guilt and fined; that his brother Edwin (who is bondsman) during the past year has appeared to be the actual business man in relator's saloon, and the general belief is that he is the real owner, and that not much is positively known on the subject; that they are well acquainted with relator's surety, Rainey; that he had conveyed to him the said piece of marsh land, and a short time before the bond was offered for approval he came to the village and rented a part of a house, and removed a part of his furniture into it, and gave out that he had become a resident of the village of Homer, but they are informed and believe that such rented house is not the residence of his family, and that he still carries on his farm five miles out of the village, and is there most of his time with his family; that they regard the value of sureties' property as greatly exaggerated in the affidavits of relator; that it lies mostly out of the village of Homer, in farms, and that Edwin Potter makes his headquarters much of his time in relator's saloon. One of the trustees, Patrick H. Carr, says in his affidavit that he does not believe surety Rainey to be a resident of the village; and all of them say they doubt the responsibility of the sureties, and the sufficiency

of the bond; that they ever have been and are still willing to approve a good and sufficient bond, and that the relator has shown no disposition to meet the views of the council, and that they have never acted—neither has the council acted—oppressively or without cause; that the council did not act on the bond on the fifth of June, at the time it was presented, for the reason they wanted more time for the consideration thereof; that when the meeting adjourned the relator took the bond away, and they have not seen it since; and they deny that the council refused to act upon that bond, and they gave the relator no reason to think the council did not intend to act upon it, but that they did intend to act upon it with reasonable promptness. The surety Potter was on the relator's bond of $3,000 last year, and the extent of his liability thereon for infringement of the law, if any, cannot with any degree of certainty be known; that the great bulk of the property of the sureties lies in their farms, one of which is claimed to be worth *about* $7,500 and the other *about* $9,000, and this only appears from the petition and affidavits made by the sureties themselves. To say the least, there is great indefiniteness about the value as stated in these affidavits.

I think the record shows there was reason for careful investigation and scrutiny on the part of the council before taking action on the relator's bond; particularly as they found they had been imposed upon in the year previous by him upon the same subject. They were entirely justified in taking sufficient time to investigate the matter of the sufficiency and responsibility of these sureties, to enable them to act with prudence. I do not think the council acted oppressively, or intended so to do, in the premises; nor do I discover in the record any evidence of caprice, or any other bad motive, or any faulty action, in the course pursued by the council. Neither do I discover any abuse of that discretion, which, in my judgment, it is not only their privilege, but their duty, to exercise under the statute.

It is true the return says that the council is willing, and always have been, to approve a good and sufficient bond;

but, independently of this, the village of Homer, by its charter, is empowered to suppress saloons for the sale of spirituous liquors, like that of the relator: Pub. Acts 1883, p. 43. Under this statute it is expressly made discretionary with the village whether they will allow liquor to be sold within the corporate limits or not, and no negative action of the council, when properly taken, can be interfered with.

I think the writ should be denied, and costs allowed to respondents.