CHRISTINA GOULD AND SARAH BLEACHER v. FRANK M. SANDERS.

*Fraudulent conveyances—Transfer of personalty to wife of debtor— Evidence.*

1. Upon the facts disclosed in the record, the court is held to have properly directed a verdict in favor of the plaintiffs.

2. In a suit involving the title to personal property levied upon by a judgment creditor of the husband and claimed by his wife, evidence of the situation and surroundings of a farm owned by the wife at the time the husband contracted the debt sought to be collected, and of the part he took in its management, and of his making sales of and dealing with the personal property there, is immaterial.

Error to Cass. (Smith, J.) Argued January 27, 1888. Decided March 2, 1888.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*William H. Tucker* and *Howell & Carr*, for appellant.

*F. J. Atwell*, for plaintiffs.

Long, J. On May 26, 1886, plaintiffs brought an action of replevin in the circuit court for Cass county, and took under the writ five horses, which were delivered to the plaintiffs.

Defendant sought to justify his detention of the property under levy of a writ of attachment issued out of the circuit court of said county in favor of one David Lilly, and a certain execution levy in favor of Harvey Hersey, against James E. Gould, husband of one of the plaintiffs. Defendant was the officer executing the writs, and claimed that the five horses were the property of said James E. Gould.

Christina Gould is the wife of James E. Gould, and Sarah Bleacher is her sister, and lives with her as a member of her family.   They claim to have derived their title to the horses in suit in the following manner:   They borrowed $130 at Lyle's bank, and gave their note.   With this money they purchased from one Mr. Dickson the 11-year-old mare.   This note they afterwards paid and took up, and produce it on the trial.   The 5-year-old horse was from this mare, with which she was in foal when purchased.   The 4-year-old was also from this mare.   Some time afterwards, having $100 in the house, they borrowed from Lyle's bank $200, and gave their note.   With this $300 they purchased from one Mr. Hebron a mare and two colts, and the 3-year-old colt in suit was one of the colts purchased with this mare.   This note they afterwards paid, and produce it in evidence.   The 2-year-old brown mare colt in suit they purchased from one Mr. Swank, and paid him of their own money $75 for it.

Mrs. Gould being called as a witness for plaintiffs, the defendant's counsel was permitted, on cross-examination, to examine her in relation to certain chattel mortgages given plaintiffs by James E. Gould; and it appears that on September 30, 1879, James E. Gould gave his wife, Christina Gould, a chattel mortgage for $1,784.50, and to her sister, Sarah Bleacher, another chattel mortgage for $1,795.25.   These mortgages covered all the personal property James E. Gould had, which was valued at $3,500.   These mortgages were renewed on September 28, 1880, and during that year James E. Gould turned all said property over to plaintiffs to satisfy said mortgages.   The mortgages were not produced but the witness produced the notes given with them, and which witness claimed were the notes canceled and delivered up when the property was transferred to the plaintiffs.   It was not claimed that these horses in suit were any of the property mortgaged by James E. Gould.

Mrs. Gould, in explanation of these mortgages, claimed

that, some 20 years before, plaintiffs' father had given to her $745, and to her sister, Sarah Bleacher, $750, which they had loaned to James E. Gould, and it was to secure these sums and the interest thereon that her husband gave the chattel mortgages.

It was also shown, upon the cross-examination of the witness, that some 12 years before James E. Gould owned a farm in his own name, and sold it to one Henry Smith, and moved with his family to Iowa. On their return to this State, six years ago, the farm was purchased back from Smith, and the title thereto taken in the name of the plaintiffs. The title to this farm was in the plaintiffs before and at the time James E. Gould became indebted to Lilly and Hersey, upon which indebtedness the attachment and execution levies were made, though the chattel mortgages were given subsequent to such indebtedness.

On November 23, 1878, James E. Gould gave David Lilly his note for $300, due in one year, and on March 27, 1879, he gave Harvey Hersey another note for $880, due in one year. The Lilly note was the one upon which the attachment was issued, and a judgment was afterwards rendered in that suit in favor of Lilly. The Hersey note was already in judgment, and it was under the execution upon such judgment that levy was made upon the horses in suit. The proceedings upon these notes to judgment were all offered and received in evidence without objection, as well as such attachment and execution, and the levies thereunder.

On further cross-examination of Mrs. Gould the defendant's counsel sought to show certain facts relative to the situation and surroundings of the farm upon which the parties lived, the title to which was in plaintiffs under and from Henry Smith; the part Mr. Gould took in its management; his making sales of and dealings with the personal property there. The court excluded these inquiries, and defendant assigns error upon such rulings.

Defendant's counsel also sought to show, upon cross-examination of the witness, that plaintiffs had other notes at the bank, at the time they claim to have borrowed money there to purchase these horses.    The court excluded these inquiries, and defendant assigns error upon these rulings.

We think the court was correct.    Counsel for the defendant was permitted to examine the witness at great length upon the purchase of the horses, and the notes given to raise the money to make the purchase.    This was a right defendant had.    He did not, however, introduce any testimony or offer any proofs to contradict Mrs. Gould as to the manner of the purchase, or that they were purchased from the parties stated, or the circumstances under which they were purchased, except such as he sought to draw out upon such cross-examination.

It was wholly immaterial what James E. Gould did about the farm, or what he did about sales of personal property there.    It was also immaterial how many notes plaintiffs had in the bank.    The question in controversy was, did the plaintiffs own these horses?    This fact the defendant had a right to controvert.    It in no manner concerned the defendant how the plaintiffs came by the farm, or whether they paid any consideration for the two chattel mortgages, or for the personal property turned over by James E. Gould to them.    It could in nowise tend to prove that James E. Gould owned the horses in suit.    These inquiries might have been pertinent upon a bill filed to reach equitable interests of James E. Gould in property in the hands of the plaintiffs.

The testimony being closed on both sides, the defendant's counsel requested the court to instruct the jury—

"1. If James E. Gould had any interest in the property in question at the time the defendant levied upon it, then he had a right to levy upon it, and this action will not lie.

"2. If the plaintiffs held the legal title to the property in question at the time of the levy, but if they held it in trust for James E. Gould, the execution debtor, or if it had been

conveyed to them for the purpose or with the intent to hinder or delay or defraud creditors of James E. Gould, then the plaintiffs cannot recover.

"3. If the consideration for the purchase of the horses was paid by James E. Gould, but the title to them, or any of them, was vested in the plaintiffs, their title so vested is presumptively fraudulent as to the creditors of James E. Gould, and unless the plaintiffs have disproved fraudulent intent they cannot recover.

"4. Unless the jury believe, from all the evidence in the case, that the plaintiffs, in good faith, owned the property in question, and that it was not held in their names for the purpose of keeping it from the creditors of James E. Gould, they must find for the defendant.

"5. If the property in question was held in the names of the plaintiffs for the purpose of delaying, defrauding, or hindering the creditors of James E. Gould, then the plaintiffs cannot recover.

"6. In determining the question submitted to them, the jury are to take into consideration all the circumstances shown upon the trial. The question is a question of fact for the jury, and they are to determine for themselves the weight of the testimony and its effect, and the belief generated in their minds by all such circumstances should be expressed in their verdict.

"7. Fraudulent conveyances and trusts may be shown by circumstances.

"8. Badges of fraud are such circumstances as cast suspicion upon a transaction.

"9. The sufficiency of evidence is for the jury; whatever testimony which satisfies a jury of a fact or conclusion is sufficient for them to found a verdict upon.

"10. The creditors of a man have a right to know fully of the claims covering property on which they levy, and such claimants have the burden of proving the *bona fides* and consideration of the transaction under which they claim.

"11. While a husband may prefer his wife as a creditor, he has no right to allow her sums to which she is not legally entitled.

"12. In the absence of the notes, the jury cannot presume that they drew illegal interest. Legal interest prior to the date of the notes in evidence was simple interest, and in computing the amount due the plaintiffs in 1879, the date of the notes in evidence, the jury must compute it at simple interest."

These instructions the court refused to give to the jury, but ‑instructed them to return a verdict for the plaintiffs for nominal damages. In this the court was correct. While many of the requests asked were correct as abstract propositions, they were not to be applied to this case. Under the circumstances disclosed by this record, the plaintiffs were entitled to recover, and it could not affect such right even if some of the money which went into the purchase of these horses came from James E. Gould. If the title was in the plaintiffs, this fact could not vest the title in James E. Gould. There was no evidence in the case to support these requests.

Judgment was entered in the court below upon the verdict in favor of plaintiffs for nominal damages. The defendant brings the case here on writ of error.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.