7   143
25*  739
25*  998

E. J. PERRY, COMPLAINANT v. CITY COUNCIL OF SALT LAKE CITY, RESPONDENT.

MUNICIPAL CORPORATIONS.—LICENSING SALOONS.—DISCRETION OF COUNCIL.—The city council of Salt Lake City, under its charter granting it the power to license, regulate and tax the manufacturing, selling, giving away, or disposing of in any manner, intoxicating liquors, has a reasonable discretion as to the person to whom the license may be granted and as to the place of business, notwithstanding the fact that the person seeking the license shows a compliance in all respects with the express requirements of the ordinances in making his application.

ID.—ID.—UNFIT PERSON AND PLACE.—Where it was conceded that the license was sought to sell liquors in the basement of a theater, which had been granted a theater license upon the express understanding that no liquors were to be sold there, that the street upon which the theater was situated was occupied almost exclusively by residences, that near by were a public school and a house for religious worship, that there was across the street a saloon, that the theater was a variety theater and that the applicant had sold liquor there without a license, and had permitted a ring fight there: *held*, that the city council might refuse a license in the exercise of its discretion when the application was made, when it had not done so by ordinance before, and that the court would not assume that

the council had acted arbitrarily or from any improper motive without some evidence to that effect:

MINER, J., dissenting.

APPLICATION for a writ of *mandamus* against the city council of Salt Lake City, preferred in the Supreme Court of the Territory.

The petition for a writ of *mandamus* set out the ordinances of Salt Lake City upon the subject of granting liquor licenses, and a compliance with the law and the refusal of the city council to grant the license without assigning any reason therefor. The answer of the city council is quoted in the opinion. The petitioner thereupon demurred to the answer and oral argument was had upon the demurrer.

The ordinances are as follows: ·

Chapter 23, Section 42.   " No person shall manufacture, sell, barter, deal out, or otherwise dispose of any spirituous, vinous, malt, or other intoxicating liquors, without first obtaining from the city council a license therefor as hereinafter provided.

Section 43.   Applications for such license shall be made by petition to the city council, signed by the applicants and filed with the recorder. Said petition must state definitely the particular place at which said liquors are to be manufactured, sold, bartered, dealt out, or otherwise disposed of, and whether at wholesale or retail. The applicant shall also file with the petition a bond to Salt Lake City, conditioned that during the continuance of his license he will keep an orderly and well regulated house, that he will not allow gambling with cards, dice or any other device or implements used in gambling, within his house where such business is conducted; that he will pay all damages, fines and forfeitures which may be adjudged against him," etc.   " Said bond

shall be in the sum of one thousand dollars with two or more sureties to be approved by the Mayor. Said sureties must justify on oath, before the recorder, that they are residents within the Territory," etc.

Section 44. "On the city council granting the license petitioned for, which shall be for the period of three months, the applicant shall pay into the city treasury the amount hereinafter specified for such license, and shall receive the treasurer's receipt therefor, and present the same to the recorder, who shall thereupon issue to the applicant a certificate of license, which certificate shall contain the name of the person or persons licensed, etc. "Said certificate shall be signed by the recorder, who shall seal the same with the seal of the city."

Section 46. "The following named sums shall be paid into the city treasury in advance, for each license granted as herein provided:" "Third—As a retail dealer $300." The remaining facts are found in the opinions.

*Mr. William H. Dickson,* and *Mr. Orlando W. Powers,* for the complainant.

*Mr. Samuel A. Merritt,* city attorney, and *Mr. Charles S. Varian,* for the respondent.

ZANE, C. J.:

This is an application by the plaintiff for a peremptory writ of *mandamus* to compel the council of Salt Lake City to grant him a license to retail intoxicating liquors. In a verified petition, he shows a compliance in all respects with the express requirements of the statutes and the ordinances in making his application for the license. To the alternative writ the defendant makes its return, verified by George M. Scott, its mayor, and

signed by Samuel A. Merritt, its attorney, and Charles S. Varian, associate counsel. On the return the defendant states the following facts, and relies upon them as a sufficient reason for not granting the license: That the city had issued a theater license to Charles F. Reynolds & Co., with the express understanding that no intoxicating liquors should be retailed in the building, and that the plaintiff, as is believed, in collusion with that company is endeavoring to obtain the license to sell liquors in a room in its basement; that the building is situated on Franklin avenue, a narrow street; that this street, and the block through which it extends, is occupied almost exclusively by residences; that about twenty rods from the theater are a public school and a house for religious worship, and fifteen or twenty rods from them is another church; that there is one saloon in the avenue opposite the theater, believed to be sufficient to supply all reasonable demands there; that the performances in the theater are of the variety class, and are attended almost exclusively by males; that the plaintiff, without license and contrary to law, sold liquor in the room on two nights after the first refusal to issue the license; and that on the night of the 14th inst. a ring fight was permitted in the theater. In conclusion the defendant claims that it acted within its discretion in refusing to grant the license, and that the sole purpose of its members in doing so was a desire to preserve public order, and the morals and happiness of the people of the neighborhood. In view of the foregoing facts, ought the court to grant the peremptory mandate? If the refusal to grant the license was not within the discretion of the council, the writ should issue; but, if it was, then it ought not.

The power of the city council with respect to the subject is found in volume 1, Comp. Laws Utah, 1888.

Section 1755 is as follows: "The city council shall have
the following powers: (40) To license, regulate, and tax
the manufacturing, selling, giving away, or disposing of
in any manner, any   *   *   *   intoxicating liquors."
The section also provides that the term of the license
shall not extend beyond the municipal year in which it
is issued, and it is subject to the restrictions of the gen-
eral laws of the territory, and a bond is required, and the
sale to minors, idiots, habitual drunkards, or persons
intoxicated, is prohibited. Section 4518, vol. 2, same
compilation, forbids the selling or furnishing of intoxi-
cating liquors to any person in the auditorium or lobbies
of any theater, etc. The power to license, regulate, and
tax the sale or disposition of intoxicating liquors within
its limits is possessed by Salt Lake City except so far as
it is regulated by the above provisions. The council of
Salt Lake City, under the power to license, regulate, and
tax, has by ordinance required a petition by the appli-
cant to be presented, in which the place of business and
some other minor facts are required to be stated, and
also a bond in the sum of $1,000, with sureties and con-
ditions as provided. The license is required to be
limited to three months, and for a retail business $300
is charged. The sale without license, and the sale to
Indians, insane, or idiotic persons, or to minors, and the
sale on Sunday, is forbidden and punished; and it is also
provided that the mayor may by proclamation forbid the
sale or disposition of such liquors on election days and
legal holidays.

The question now comes, has the council any further
discretion with respect to granting such licenses? Under
its power to regulate, has it any discretion as to the per-
son to whom licenses shall be granted, as to the place of
business, or as to the number of licenses to be granted?
The legislature could have prohibited the traffic, but it

did not do so. However, it did give the city council the power to license, regulate, and tax it. The power is conferred on a deliberative body, and its authority with respect to the subject is not limited to ministerial duties. The power of the legislature was unlimited with respect to the business, and all of it except the power to prohibit, subject to a few restrictions named, was conferred by the charter upon the local legislature; and the will of such a body is expressed by a vote, and with the right to vote upon any question is implied the discretion to vote for or against. The business of retailing liquors may be regulated in various ways. To regulate is to control, restrict, and direct. To regulate the liquor traffic according to the purpose for which the power was granted would be to so govern it that it will be attended with good order, and, so far as may be, be consistent with the happiness and welfare of the people in the communities in which it is conducted.

In *Packing, etc., Co.* v. *City of Chicago,* 88 Ill. 221, the court said: "We are clearly of opinion that the power to require a license is one of the means of regulating the exercise or pursuit of this business. There is, no doubt, a great variety of other means that might be adopted to accomplish the purpose, but these municipalities are not restricted as to the means they shall employ to regulate the business. In the various illustrations of the meaning of the word 'regulate,' we find, among others, 'to direct,' 'to govern,' 'to rule,' 'to conduct.' As the language is used in reference to the power of a city or village government, we must suppose it was intended to mean that such bodies might rule or govern this character of business." The general rule is that public corporations and officers are required to do what they are authorized to, when such performance would be beneficial to an individual or to the public. Upon the subject of

imperative and discretionary powers, Judge Dillon says:

"It is often material to determine whether a duty imposed by law or charter upon municipal corporations or public officers is imperative or discretionary. This is always a question of legislative intention, and therefore of construction. The general tests to ascertain this intention, propounded in the cases are of doubtful value. * * * Each case, we repeat, must be largely decided on its own circumstances, and the legislative intent gathered from the whole act. No positive, inflexible, or stereotyped rule can be laid down." 1 Dill. Mun. Corp. (4th ed.) § 98.

It is apparent from the act under consideration that the intention of the legislature in conferring on the council the power to regulate the sale of liquor was to enable that body to protect society from the evils attending it. The benefit of the dealer was not the chief end, therefore the duty of the council with respect to him must depend largely on the good of the neighborhood. It follows that it is the duty as well as the right of the council to use all reasonable means to give such protection as the public welfare demands. We are of the opinion that the council, in the regulation of the business, has a wide discretion, but it is not arbitrary discretion. Under the power to regulate, the business may not be prohibited. The authority is delegated to the councilmen as reasonable men, and with the expectation that they will employ reasonable means. To intrust the privilege of selling intoxicating liquors to persons whose antecedents, habits, and characters are such as to inspire confidence in them, and warrant the belief that they would not violate the law by selling to minors, habitual drunkards, or intoxicated persons, and would be likely to conduct their business in other respects with due regard to goods morals and the peace and happiness of society,

would appear to be within that discretion included in the right to regulate.

The exercise of a reasonable discretion as to the localities in which the business shall be carried on would appear to be within the power to regulate. A saloon along-side of a school-house or a church would be very undesirable, and to establish one along-side of a man's home would be regarded as very objectionable. To authorize the retailing of liquors in the midst of the homes of the people would be palpably wrong. Neighborhoods infested with liquor saloons are not suitable communities for boys and girls to grow up in; and so a limitation of the number of places for retailing intoxicating liquors in a city would be a reasonable regulation. Because the council may be authorized to license liquor sellers it does not follow that they must license all who may apply. The powers delegated to the legislative departments of municipal governments are usually exercised by ordinance. The council grants the license by a vote. In that way the power is expressed. When the application is made, it would appear to be a suitable time to inquire and decide as to whether the applicant is a suitable man to be intrusted with the business; and so as to the determination of the place, and as to whether more licenses should be granted. General tests might be established by ordinance, by which to determine the fitness of persons to be intrusted with the business of selling liquor, and ordinances might be adopted designating localities in which the business may be conducted, and limiting the number. But we are not prepared to say that the business may not be regulated in such respects without ordinance. The charter confers the power to regulate the traffic upon the city, without expressly requiring it to be exercised by ordinance. But it is said that the councilmen may act from mere whims; caprice,

partiality, or prejudice unless the regulation is by ordinance. The court should assume that public officers will act from proper motives until the contrary appears. It is also claimed that the court must presume that the council acted arbitrarily or without sufficient reason in refusing the license, because no reason appears upon its record. The court will not assume that the council refused the license arbitrarily, and without sufficient reason, without some proof. Being public officers, and acting under the sanction of an oath, the court will assume that they acted lawfully until the contrary appears.

We have been referred to a decision of the supreme court of the United States involving the validity of an ordinance of the city of San Francisco, in which this language is found: "The sale of such liquors in this way has therefore been at all times, by the courts of every state, considered as the proper subject of legislative regulation. Not only may a license be exacted from the keeper of the saloon before a glass of his liquors can be thus disposed of, but restrictions may be imposed as to the class of persons to whom, * * * and the hours of the day, and the days of the week, on which the saloons may be opened. Their sale in that form may be absolutely prohibited. It is a question of public expediency and public morality. * * * There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state, or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rests in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue

license for that purpose." *Crowley* v. *Christensen,* 137 U. S. 86, 11 Sup. Ct. Rep. 13.

The case of *State* v. *Holt Co. Court,* 39 Mo. 521, was an application for a writ of mandate to compel the county court to issue a license. The statute provided that, if the court shall be of the opinion that the applicant is a person of good character, the court may grant a license for six months. This fact was admitted. The application was made in conformity with the requirements in all respects of the statute governing licenses, and the county court refused to grant the license. The *mandamus* was refused; the court holding that, although a party applying for a dram-shop license may show himself to possess all the qualifications requisite for the issuing of a license under the statute, the county court may still, in the exercise of its discretion, refuse to grant such license. *Muller* v. *Commissioners,* 89 N. C. 172, was an application for *mandamus.*

The statute involved in the case provided that the applicant might obtain a license from the county commissioners to retail liquor upon proving a good moral character. The court held that such commissioners were not bound to license an applicant though he be qualified by proof of good moral character; that they had a limited legal discretion, and, in passing upon an application, they have a right to take into consideration the question whether the demands of the public require an increase of such accommodations, and whether the place proposed to establish a bar-room at would be a suitable one. To the same effect is *Attorney General* v. *Justices of Guilford County,* 5 Ired. 315; *Petition of Raudenbusch,* 120 Pa. St. 328, 14 Atl. Rep. 148; *Schlaudecker* v. *Marshall,* 72 Pa. St. 200; *Toole's Appeal,* 90 Pa. St. 376. The statutes providing for licenses construed in these cases differ in some respects from the Utah statute; but the

principles laid down in them are similar in effect to the
North Carolina cases, *supra*. *Parker* v. *Portland*, 54 Mich.
308, 20 N. W. Rep. 55, was a petition for *mandamus* to
compel the board of trustees of the village of Portland
to approve a liquor bond. The power to regulate the
business had not been granted by the legislature to the
board. Their simple duty was to determine the suffi-
ciency of the bond. The discretion only extended to that
duty. The court held that *mandamus* to compel a vil-
lage board to approve a liquor bond will be denied if
there is nothing to show that the refusal to approve it
was capricious, or to rebut the presumption that the
board had fairly passed upon all the questions which
determine the sufficiency of the bond, and the reliability
of the sureties. *Potter* v. *Village of Homer*, 59 Mich. 8,
26 N. W. Rep. 208, and *Amperse* v. *City of Kalamazoo*,
(Mich.) 26 N. W. Rep. 222, are also *mandamus* cases
involving a construction of the same law as the last
case.

In *Potter* v. *Village of Homer*, the court held that
the village council in approving the bond had the same
discretion and no more than is possessed by other persons
called on to approve sureties. We do not regard the
Michigan cases as analogous to the one in hand. The
plaintiff also relies upon *Zanone* v. *Mound City*, 103 Ill.
552. The court held that the village council, under the
power to regulate the liquor traffic, might refuse to license
persons of such habits and character as rendered them
unfit to be licensed, and to limit the number of dram-
shop keepers, but held that the discretion should be exer-
cised by ordinance in order to avoid favoritism and mon-
opoly. From this opinion three of the seven judges dis-
sented.

After a careful consideration of the statutes, the
ordinances, and the cases cited, we hold that the defend-

ant possesses the power to license, regulate, and tax the liquor business, and that in the use of such authority it may exercise a reasonable discretion in determining who are suitable persons to intrust the business to, the places where it may be conducted, and the number of licenses it will issue, and that the council may exercise that discretion when the application is made, when it has not done so by ordinance before, and that the court will not assume that the council acted arbitrarily, or from any improper motive, without some evidence to that effect. The writ of *mandamus* is denied.

BLACKBURN, J., and ANDERSON, J., concurred.

MINER, J. (*dissenting*):

I am unable to fully concur with the majority of the court in this case. The relator appears to have complied with all the requirements of the statutes and ordinances, and it cannot be claimed that the place at which he proposes to carry on the business is within the prohibition of the statute or ordinances. The question arises, can the city council, under the power to regulate (conferred by the charter) impose additional restrictions? If so, how is that power to be exercised? Must it be by ordinance, so that the requirements prescribed, whatever they may be, will operate uniformly upon all alike under the same circumstances, thus precluding partiality and favoritism; or may the council, notwithstanding the compliance by the applicant with all the provisions of the statute and ordinances of the city upon the subject, arbitrarily grant or refuse each particular license as the same is applied for, and that, too, without giving any reason for its action? It seems to me that the regulation should properly be by an ordinance. If the statute conferred upon the council any such absolute power, then, as relator's

counsel contend, are they admirably calculated to enable the members of the city council to reward their friends and punish their enemies, but they furnish no safeguards for equality or honesty of official action. Some members may vote against the application because in their honest judgment it would be detrimental to the best interests of the city to grant it; another, because he believes there are already saloons too many; another, because the applicant is a personal enemy of his; another, because the applicant is not a member of his religious or political faith; another, because he does not think it right to sell liquor, or license a wrong; another, because he wants to prohibit the sale. Thus a bare majority may be secured against the issuance of the license to one man and grant it to another. It is claimed that in this case seven councilmen voted for and seven against the petition, the mayor giving the casting vote against it. Neither the council, as a body, nor any individual member thereof voting against the application, gave or could be induced to give any reason for his vote or action; and why this license is refused this court is still in ignorance, except by the return, which gives no reason for individual or corporate action.

The sale of liquor has always been a lawful business in this city. It has never been prohibited by statute, and the council never had the power to prohibit it. By the charter of 1860 it had power to license, regulate, and restrain it. See Comp. Laws 1876, pp. 699–703, § 24. And so it remained until January 20, 1882, when the charter was amended. By the amendment, power was given to the city council to license, tax, and regulate; the power to restrain being omitted. This leaves no power to prohibit. See Laws 1882, p. 2. The defense rests entirely upon the supposed right of the council, in its discretion, to grant or withhold license as it may see

fit. All men are equal before the law; and if one man, on complying with the statutory provisions, may be licensed to engage in the business of selling liquors, every other man in like condition, on complying in like manner with the conditions imposed by law, has an equal right to a similar license. Legislation in a free republican form of government should mete out equal rights to all law-abiding citizens; and it is alike against the spirit and form of our government and institutions to grant any special privilege to one individual, and deny it to another who stands on equal footing with himself; and this, in my judgment, cannot be accomplished under the guise of "discretion." The "discretion" vested by the legislature in the city council is not an arbitrary power, to be exercised as the caprice or prejudices of that body may dictate, but a legal discretion, whereby the council is to determine whether or not the applicant has substantially complied with the provisions of law. The common council of a city must be governed by the same rules of law in their action upon the granting of these licenses as other bodies who are called upon by statute to pass upon the qualifications of others to engage in any business or calling requiring special conditions preliminary to its exercise, and they are bound in all cases to act fairly, and to treat each application upon its own merits, impartially.

In the present case it seems there is one saloon in the neighborhood already licensed, and the common council think this sufficient for the needs of the neighborhood. If this reasoning were sound, the common council might, in their "discretion," grant to any favored individual an exclusive monopoly of the business in any neighborhood, or even in the entire city. Could a more fruitful field of favoritism be possibly devised? It is certainly not in accordance with my views as to equality before the law.

That the discretion vested in the common council is not an arbitrary power, but a legal discretion, to be exercised equally towards all in like condition, I might cite numberless authorities.  I call attention, however, to *Ex parte Candee*, 48 Ala. 386; *State* v. *County Court*, 41 Mo. 221–227; *Mixer* v. *Supervisors*, 26 Mich, 422; *Amperse* v. *Kalamazoo*, 59 Mich. 78, 26 N. W. Rep. 222; *Potter* v. *Homer*, 59 Mich. 8, 26 N. W. Rep. 208; *Zanone* v. *Mound City*, 103 Ill. 552; *Golden* v. *Bingham*, 61 Ind. 198; 11 Amer. & Eng. Enc. Law, 641.  It is true that the charter of the city allows the council power to license, regulate, and tax this business, which is greater authority than merely to approve or reject the bonds; but the council have not decided that the place or neighborhood was improper wherein to carry on the traffic, nor that the relator was disqualified in any manner, but have merely said, in effect, that in that neighborhood one man may engage in the business, but another may not.  This is not a question of prohibiting the traffic in that locality, but of prohibiting a particular individual, against whom no disqualification is alleged, and who has complied with the law, from engaging in the business, and at the same time permitting another, under no worse legal circumstances, to do so.  This cannot, in my view, be deemed within the discretionary powers of the council.  I think the council had no right to withhold the license, and that the *mandamus* should issue as prayed.