Jackson v. State.

WILLIAM R. JACKSON ET AL. V. STATE OF NEBRASKA, EX
REL. THOMAS J. MAJORS.

| 57 | 182 |
| 57 | 470 |

FILED DECEMBER 22, 1898.    No. 9847.

Mandamus: SCHOOLS: REINSTATEMENT OF PUPIL. An action of man-
damus will lie and may be maintained to reinstate a pupil in a
school, if the action of the officer or officers by which the party
was refused admission to or continuance in the school was an
arbitrary or capricious exercise of authority.

ERROR from the district court of Nemaha county.
Tried below before STULL, J. *Affirmed.*

*C. J. Smyth, Attorney General,* and *W. H. Kelligar,* for
plaintiffs in error.

*G. W. Cornell* and *S. P. Davidson, contra.*

HARRISON, C. J.

Thomas J. Majors, the defendant in error, relator in
the trial court, made application for the issuance of a
writ of mandamus to compel the respondents in the ac-
tion to reinstate and continue the son of relator, Thomas
A. Majors, as a pupil of the State Normal School at Peru,
and to permit him to attend the school, and enjoy all the
rights, privileges, and advantages of a pupil thereof. An
alternative writ was issued, and respondents filed an an-
swer or a return to said writ. As a result of a hearing
of the issues a peremptory writ was allowed, and re-
spondents present the cause to this court by petition in
error.

The objection was made at the commencement of the
trial to the introduction of any evidence on the grounds
of insufficiency in statements of the petition and alter-
native writ, and that it was overruled is of the alleged
errors urged. It is true, as argued, that some of the
allegations of the pleadings referred to partake of the
nature of conclusions, but it may, we think, be fairly

said that in the main they are more in the nature of
statements of ultimate facts, and if not wholly unobjec-
tionable, must be held allowable as against an attack
delayed until the stage of proceedings this was. This
State Normal School was located and established at
Peru by an act of the legislature which was approved
June 20, 1867. It was stated in the act that the school
shall be for the exclusive purpose of the "instruction of
persons, both male and female, in the arts of teaching,
and in all the various branches that pertain to a good
common school education; also, to give instruction in
the mechanic arts, and in the arts of husbandry and agri-
cultural chemistry, in the fundamental laws of the United
States, and what regards the rights and duties of citi-
zens." It was further provided that the school should be
under the direction of a board of education of seven mem-
bers, five to be appointed by the governor, the state
treasurer and state superintendent of public instruction
to be members by virtue of their offices. The board was
empowered to appoint a principal and assistant princi-
pal to take charge of the school, to appoint teachers and
officers required, and to prescribe such rules and regula-
tions for the admission of pupils as it deemed necessary
and proper. It was also required that any applicant
for admission should undergo an examination, the man-
ner of which should be prescribed by the board, and if
it appeared that the applicant was not of good moral
character or would not make an "apt and good teacher,"
he or she should be rejected. It was further set forth
that applicants for admission might be required to sign
a declaration of intention to follow teaching in the
"primary schools" of the state as a business, or might be
admitted without signing any such declaration on terms
to be prescribed by the board. In 1871 an act supple-
mental of the act of 1867 was enacted, in which it was
stated in regard to the admission of pupils: "In the ad-
mission of pupils, preference shall be given first as is
provided in the act to which this is supplemental;

secondly, to citizens of Nebraska, and their children; thirdly, to the citizens of other states; and the board may determine upon what terms citizens of other states may be admitted." (Session Laws 1871, p. 97, sec. 6.) In 1881 an act was passed which in terms repealed the act of 1867 and the supplemental act, and provided for a governing board for the school, which as to membership and the manner of their appointments, etc., did not differ materially, if at all, from the prior act. It was therein prescribed that the secretary of the board keep an exact and detailed account of the doings of the board; also that the principal of the school should be its chief executive officer and be responsible to the board for the control and management of the school; that "The board in their regulations, and the principal in his supervision and government of the school, shall exercise a watchful guardianship over the morals of the pupils, but no religious or sectarian test shall be applied in the selection of teachers, and none shall be adopted in the school." (Session Laws 1881, p. 374, ch. 78, subd. 13, sec. 9.) In section 13 of the act it was stated: "Students, when entering the school for the first time, shall pay a matriculation fee of five dollars." This it appeared had been paid by young Majors at some time during his attendance as a pupil of the normal school, which attendance had continued during about ten years. In section 16 of subdivision 13 of the act of 1881 it was provided: "The board shall make such rules and regulations for the admission of pupils to the school as may seem to be best for the interest of the school and not inconsistent with the purpose for which the school has been established."

Of the making or adoption of any specific rules and regulations in regard to admission the evidence was very unsatisfactory. There was, if any, a very incomplete record of any action by the board in this respect. It is, however, contended that the following, which are extracts from a catalogue of the school, under the heading therein of "General Information," and subheadings, "Ad-

mission" and "Continuance in School": "As the State Normal School is not primarily an institution for the education of children or people in general, but a professional school for the special instruction and training of teachers, and as its course of study, being arranged with special reference to this end, cannot be accomplished in a fragmentary way with any advantage to the student, but with great disadvantage to the school, all applicants admitted in accordance with the regulations of the board of education must give satisfactory evidence of fitness in preparation and in character for the vocation to which they aspire." "Continuance in school will depend on diligence in study and good conduct. All students are expected to be punctual, prompt, neat, accurate, thorough, earnest, truthful, and teachable, for such only can become satisfactory pupils and successful teachers. Continued idleness or decided immorality on the part of a student will insure his speedy expulsion. Nor will any student be retained who, during the regular school term, shall take lessons or instructions elsewhere or engage in any other business which, in the opinion of the faculty, is incompatible with his prompt attendance at school or his careful preparation for his prescribed school duties, nor whose character and general influence are not for the good of the school,"— had been prepared and presented to and adopted by the board as rules on the subjects treated in them. Whether it was proved that these were of duly adopted rules and regulations or not, it did appear that in the admission of pupils there was somewhat of the routine observed of which the foregoing alleged rules were to a considerable, if not to a full, extent elemental.

It was disclosed that the son of relator made application at the opening of the school during the fall of 1897 for admission or continuance as a pupil, and had been by the faculty refused or rejected. Of this action there was the following communication to the father as notice thereof:

"STATE NORMAL AND TRAINING SCHOOL,

"PERU, NEBRASKA, Sept. 6, 1897.

*Hon. T. J. Majors, Peru, Neb.*—DEAR SIR: Your son, Thomas Majors, Jr., having applied for admission to the State Normal School, the faculty, after consideration of the interests of the school, deem it best to refuse the same. This action is taken without reference to his guilt or innocence in matters with which his name has been connected.

"Fraternally,                        J. A. BEATTIE."

This action was, on consideration by the board, the father of the applicant and an attorney in his behalf being present during a portion of the time of its deliberations thereupon, approved; but no reason other than it was for the best interests of the school was ever given as the basis for the action taken.

It is now strenuously insisted that the decision of the faculty or of the board, or both in combination, cannot be assailed in an action of mandamus; that there was that in it which gave it the character of an adjudication; that there was elemental of it an exercise of discretion, and to entertain this action of mandamus was to review the decision; also open to the objection that it was an attempt by mandamus to control a judicial discretion. That these things will not be done by mandamus is well established generally, and thoroughly so in this state; but it may be said that there was the power here in the person or body who or which made the order of refusal, —to avoid the effect of which was the motive of this suit, and we will say here that we cannot consider the action of the board as in any sense a review or hearing on appeal from the action of the faculty or principal,— to exercise a discretion in the admission of pupils; or it might become a mere ministerial or administrative act, with nothing of the judicial in it, where the application, both in form and substance, was in all things correct and unquestionable, and the admission would consist in naught but the registration of the pupil and signifying

to him his acceptance, and a refusal would be an entire disregard or ignoring of the application, and the arbi- trary exercise of power. It may be likened unto the authority which may be exercised by an officer in the approval or non-approval of a required bond or under- taking. The right of examination, and of passing on the financial sufficiency of the instrument, and the sureties thereon, may be or exist, and in it there may be some- what of the exercise of a discretion,—a judicial weighing of the. matter, if you please; yet in some instances, where the form and substance of the bond are without question, it has been said mandamus will lie to secure an approval. (*McLeod v. Scott*, 26 Pac. Rep. [Ore.] 1061; *Potter v. Village of Homer*, 59 Mich. 8, 26 N. W. Rep. 208; *Amperse v. City of Kalamazoo*, 59 Mich. 78; *State v. Lafayette County Court*, 41 Mo. 221; *Ex parte Candee*, 48 Ala. 386; *In re Prospect Brewing Co.*, 17 Atl. Rep. [Pa.] 1090.) There have been at least three cases decided by this court, in each of which there was a question very similar to the one in the case at bar, and the jurisdiction of the court and the control by writ of mandamus, although not di- rectly discussed, or of the points presented, were directly involved. In one the issuance of the writ was upheld, and in each of the others there was a tacit recognition at least of the right to the action. A suspended pupil was reinstated in school rights and privileges by writ of mandamus in *State v. School District*, 31 Neb. 552. The other two to which we have just referred are *Bourne v. State*, 35 Neb. 1, and *Board of Education v. Moses*, 51 Neb. 288. See, generally, on the propositions involved, *State v. White*, 82 Ind. 278; *State v. Lafayette County Court*, 41 Mo. 221; *Perkins v. Board of Directors*, 56 Ia. 477; Spelling, Extraordinary Relief, p. 1135, sec. 1384. The same propositions or principles have been recognized in two cases in relation to certificates of nominations to office, and the duty of an officer to whom they were, pur- suant to law, certified, to place the names of the parties shown to have been nominated, or cause them to be

placed on ballots, and whether mandamus would lie to control or direct the ultimate performance of the duty, and in each of which the questions were raised and discussed. (See *State v. Piper*, 50 Neb. 25; *State v. Smith*, 57 Neb. 41.) In the following cases the questions were not raised in any, but involved in all of them: *State v Allen*, 43 Neb. 651; *Woods v. State*, 44 Neb. 430; *State v. Clark*, 56 Neb. 584; *State v. Moore*, 46 Neb. 590.

There was herein alleged the deprivation of a valuable right for which the damages could not be estimated with any accuracy or certainty, and for the wrong committed there was no adequate remedy at law. This record discloses no reason for the refusal to allow the relator's son to continue in the school as a pupil. A reason may have existed, but it was not shown. So far as this record discloses there was an arbitrary exercise of power or authority on the part of the faculty; a rejection of the pupil because the parties willed it should be so; no exercise of judgment or discretion in the matter, but a mere operation or putting into effect a desire. Under the circumstances and facts shown, the issuance of the writ was proper.

AFFIRMED.