JAMES BARRY ET AL. V. STATE OF NEBRASKA, EX REL. RODOLPHUS M. HAMPTON, ET AL.

FILED JANUARY 19, 1899. No. 10187.

Mandamus to County Board: SPECIAL ELECTION: COUNTY SEAT. An action of mandamus may be maintained to require a board of county commissioners to order a special election for the purpose of voting upon the removal of a county seat, if a proper petition for such election has been presented and the refusal of the prayer of the petition is the exercise of an arbitrary or capricious authority.

ERROR from the district court of Box Butte county. Tried below before WESTOVER, J. *Affirmed.*

*Francis G. Hamer, W. M. Iodence, Montgomery & Hall,* and *J. E. Porter,* for plaintiffs in error.

*N. K. Griggs, L. A. Berry,* and *R. C. Noleman, contra.*

RYAN, C.

By their petition in error two of the three county commissioners of Box Butte county complain of an order of mandamus of the district court of said county whereby the board of county commissioners of said county were required to convene on July 18, 1898, and call a special election to determine whether or not the county seat of said county should be relocated at Alliance. There are various errors alleged, but they all depend upon the force of the last, which is that the said court erred in assuming jurisdiction and in issuing the writ of mandamus.

On March 15, 1898, there was filed in the office of the county clerk of said county a petition asking for the submission above indicated. On this petition were 650 names, and in the petition itself these were described as the names of resident electors of said county, and, except in three instances, the purported place of residence of the petitioner was given. With this petition there was filed the certificate of the county clerk showing that at the November election, 1897, the total number of votes cast in said county was 932. On March 15, 1898, there was filed in the office of said clerk a written objection to the aforesaid petition, in which, in general terms, it was alleged that the petition was not signed by resident electors of said county equal in number to three-fifths of all the voters in said county at the last general election held therein; that the names of many persons appearing on said petition were not signed by said persons and their names were placed thereon without authority; that many petitioners were not electors of the county; that many purported signatures were fictitious; and that many signers were minors, and others disqualified

34

to vote or sign the petition. This written objection was signed by Alonzo Sherwood and forty-six other persons, and in it there was a prayer for at least sixty days to enable proof to be obtained of the objections urged and to permit of the filing of a definite answer and specific objections. There were objections to this delay. On April 11, 1898, Sherwood and Calvin J. Wildy interposed objections to the jurisdiction and authority of the board to proceed, in which objections were recited the former proceedings; the fact that no notice had been given; the further inability of said parties, by reason of lack of time, to thoroughly investigate the names of petitioners; the allowance of time till May 9, 1898, which the board had given and reciting that the order of the district court requiring the board to meet on April 11, 1898, had been made without notice to Sherwood and Wildy and without giving them an opportunity to be present in said court to contest the application for a writ of mandamus. Sherwood and Wildy also averred in their remonstrance that the said order of the district court was null and void and was without jurisdiction because no error or appeal proceedings had been prosecuted by the relator in said mandamus proceedings from the order of the board postponing the hearing of the petition till May, 1898, and because an appeal from the mandamus order was in course of prosecution to the supreme court, and because the then present sitting of the board was neither a regular nor a special session regularly called. This remonstrance was objected to by the petitioners because it sought to procure the board to violate the order of mandamus made by the district judge. Thereupon, by an affidavit of R. C. Noleman, one of counsel for petitioners, proof was tendered of his residence for more than ten years in the county, and that having examined the petition it was found to contain the names of more than 600 duly qualified electors of said county personally known to said affiant to be duly qualified. On April 12, 1898, there was filed in said county

clerk's office a remonstrance signed by about 500 persons. These parties simply expressed the disfavor with which they regarded the proposed removal of the county seat. On the same day Henry J. Winten and Frank Shimek filed an answer, as it was styled, in which they represented that the petition had not been signed by resident electors equal in number to three-fifths of the voters of the county cast at the preceding general election, and that a remonstrance of more than two-fifths in number had been filed; that some names to the petition had been obtained by bribery and fraud; that some were forgeries; that many who had signed the petition had signed the remonstrance; that many had failed to give their age, the place or duration of residence in the county; that many had signed more than once; that many petitioners were minors and not legal resident voters, and that many signatures were fictitious. There were filed objections to the sufficiency of this showing, followed by the written withdrawals of individual names from the petition. On April 14, 1898, the board of county commissioners convened, heard evidence, and on the next day two of the members of the board concurred in finding as follows: "On consideration of the petition, the answer thereto, and the remonstrance filed herein, and the evidence, the board of county commissioners find that thirty-five of the resident electors who signed said petition afterward signed a remonstrance objecting to the calling of a special election for the purpose of submitting the question of the relocation of the county seat to the voters of this county; that the names of two persons who signed said petition appear twice on said petition; that fifteen other persons who signed said petition and have not signed said remonstrance have entered lands outside of the county under the homestead laws of the United States and now claim their residence on said land; that six other persons who signed said petition have removed from Box Butte county since signing the same; that Christ Hornberg, whose name appears upon said peti-

tion, did not sign the same or authorize his name to be placed thereon; that 110 other persons who signed said petition are not resident electors of Box Butte county and were not when they signed said petition; and that said petition is not signed by resident electors of Box Butte county equal in number to three-fifths of the votes cast herein at the last general election." It was therefore ordered that the prayer of the petition be denied. George W. Duncan, a member of the board of commissioners of Box Butte county, filed what might aptly be styled his minority report or findings, on which he reached the conclusion that the prayer of the petition should have been granted. These were the facts shown by the petition for a mandamus in the district court, of which the transcript in this court covers about sixty-five type-written pages. Necessarily the above abstract of the facts is incomplete, but it shows with sufficient fullness the matters involved. The respondents by their answer asserted the correctness of the findings which had been made by them; assailed the sufficiency of the averments of the petition for a mandamus; denied that jurisdiction of the subject-matter of the action existed in the district court; alleged the pendency of error proceedings to review the order refusing to call a special election and denied the power and jurisdiction of the district court, by mandamus proceedings, to review alleged errors or control the judicial discretion of the board of county commissiones.

On the hearing on June 15, 1898, there were made the following findings: "The court, after hearing the evidence adduced by the respective parties, and being fully advised in the premises, does find that the allegations of the relator's petition are true. The court further finds that the petition presented to the county commissioners of Box Butte county, Nebraska, asking for the calling of the special election for the purpose of voting upon the relocation of the county seat of said county was in due form of law; that the same was signed by more than

Barry v. State.

three-fifths in number of the votes cast in the said county
at the last preceding general election held in said county
in November, 1897; that at said election there were cast
in said county a total of 952 votes, and no more; that
said petition, as presented to said board, contained the
names of 638 qualified voters of Box Butte county who
had signed the same; that the respondents, without au-
thority of law and without any objection having been
made to the said petition or any petitioner named
thereon, in manner and form as required by law, did
strike from said petition 169 names without any author-
ity therefor." On the above findings the court adjudged
that a writ of mandamus should issue to the county
board of Box Butte county commanding the restoration
of the names rejected from the petition and forthwith
the calling of an election as prayed in the said petition.
Afterward there was overruled a motion for a new trial,
to which order there was due exception taken.

As intimated in the outset, the question which, in our
opinion, is the pivotal one in this case is whether the
court had jurisdiction to enter the order in this court
assailed. In *State v. Crabtree*, 35 Neb. 106, a writ of man-
damus issued to compel a board of county commissioners
to call a special election for the relocation of a county
seat upon a willful refusal to do so after the petition
provided by law had been presented. It is urged that in
that case the board withdrew its opposition and practi-
cally assented to the order, but this is not important,
for consent could not confer jurisdiction beyond the
powers of the court. In *State v. Smith*, 57 Neb. 41,
jurisdiction of the subject-matter of an action is defined
as the power to hear and determine the cause. That
was an application for a mandamus to compel the re-
spondent, as county clerk of Buffalo county, to print the
official and sample ballots for the general election in
November, 1898, without the names of J. M. Easterling
and Emery Wyman as nominees of the democratic party
for representatives of the fifty-eighth district in the legis-

lature. These candidates had not been nominated in a convention, but had been nominated by a managing committee in which the convention had vested the power to supply vacancies in the ticket which might occur after the convention had adjourned. The committee assumed to name the aforesaid candidates in a proper contingency, and the county clerk was about to print their names on the official and sample ballots. The writ of mandamus was asked to prevent this, and was granted on the theory that the members of the committee had not been legally notified to meet to consider the necessity of making the nominations which the county clerk was about to recognize. The reasoning in this case fully justifies the right of the district court to interfere as it did by mandamus in the case at bar. Again, in *Jackson v. State*, 57 Neb. 183, there was by this court recognized the right of a party to a writ of mandamus whereby an order of the faculty denying him the right to attend the State Normal School was held ineffective against the relator's son, and this was upon the theory that the order of exclusion was an arbitrary or capricious exercise of authority. In that case it was very zealously urged that to issue a writ of mandamus was to control judicial discretion and irregularly to review a decision of a board acting within the scope of its authority. This challenge called forth a full and satisfactory consideration of the objections urged, both in the light of principle and of authority. In the conclusion of his opinion HARRISON, C. J., said: "There was herein alleged the deprivation of a valuable right for which the damages could not be estimated with any accuracy or certainty, and for the wrong committed there was no adequate remedy at law. This record discloses no reason for the refusal to allow the relator's son to continue in the school as a pupil. A reason may have existed, but it was not shown. So far as this record discloses, there was an arbitrary exercise of power or authority on the part of the faculty, a rejection of the pupil because the parties willed it should

be so; no exercise of judgment or discretion in the matter, but a mere operation or putting into effect a desire." In view of the full consideration this question received in the cases just referred to it is unnecessary again to elaborate the views of this court upon the same subject. We think the district court was justified in finding from the evidence that the order of the board of county commissioners was an arbitrary or capricious exercise of authority. The writ of mandamus was therefore properly issued and the judgment of the district court is accordingly

AFFIRMED.